[No. 3699.  Decided December 17, 1901.]

JAMES ELWOOD et al., Appellants, v. H. L. DICKINSON
et al., Respondents.

FISHERIES — LOCATION OF FISH TRAP — COMPLIANCE WITH STATUTE —
PRIORITY OF CLAIMS.

The holder of a fishing license who locates a site for a fish
trap or pound net, but is unable to perfect his location in accord-
ance with statutory requirements for a period of six weeks there-
after, though in the meantime using reasonable and diligent effort
to comply with the law, is entitled to priority over a subsequent
locator who has actual notice of his attempted location, although
the subsequent locator more nearly conforms to the requirements
of Laws 1899, p. 203, § 9, which provides that locations for pound
nets or fish traps shall be indicated by driving at least three sub-
stantial piles thereon, which must extend not less than ten feet
above the water at high tide, one pile being placed at each end
of the location, with the claimant's license number posted thereon.

Appeal from Superior Court, Whatcom County.—Hon.
WILLIAM HICKMAN MOORE, Judge.  Reversed.

Dorr & Hadley, for appellants.

Kerr & McCord, for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Plaintiffs, appellants, in their com-
plaint substantially allege that they were qualified owners
of fish license No. 146; that on the 20th of March,
1899, they entered upon and gave notice of the location
of a pound net or fish trap in the waters of the Gulf of
Georgia, in Whatcom county, off the west shore of Point
Roberts, and near the international boundary line between
the United States and Canada; that for the purpose of
indicating said location they placed thereon a "shovedown"
and buoys, and posted the license number thereon, and
drove piles thereon; that on the same day, after notice

of plaintiff's claim, defendants drove piling in the waters
of the said location, and that on March 25, 1899, plain-
tiffs again placed three substantial piles on the location,
and securely posted the license number thereon; that, on
the day following, the defendants drove three piles on
said location; that the piling so driven by the defendants
did not conform to the requirements of law; that on the
3d of May, 1899, plaintiffs drove on said location
three substantial piles conforming to the requirements of
the law, and posted the license number thereon; that on
all of said dates there were no other location piles mark-
ing a pound net location, or any other fixed appliance,
and there was no other fixed appliance in said waters
within 600 feet endwise or 2,400 feet laterally from
plaintiffs' location ; that the plaintiffs constructed a fish
trap thereon in water of less depth than 65 feet at low
tide, and that plaintiffs have an interest therein; that on
September 5, 1899, defendants commenced the construc-
tion of a fish trap within the prohibited distance of plain-
tiffs' location, and in a manner to shut off and intercept
the run of salmon, which frequent said waters; and that
defendants would complete the same unless restrained.
The answer denied all the material allegations of the
complaint, except that the qualification of plaintiffs to
locate the fish trap was admitted.    The answer alleged
the making of a valid pound net location by defendants
on March 20, 1899; admits the driving of piles thereon
on March 26, 1899; admits that defendants went upon
the location and commenced the construction of a fish
trap thereon on September 5, 1899, and that, unless
they were restrained, defendants would complete the
construction of their trap.    Defendants also file a cross
complaint, in which they aver prior location of the site
for the pound net in the waters in controversy in com-

pliance with the requirements of the law in giving such notice, and their qualifications for the fishing license; and defendants demand that their location be declared first in right, and pray for an injunction against the trap maintained by plaintiffs. A trial was had, and a decree in favor of defendants establishing their right to the location, and enjoining the maintenance of the trap constructed by plaintiffs. The statute defining the location for traps or pound nets in force at the time of the commencement of this controversy is § 9 of the act relating to food fishes, approved March 13, 1899 (Laws 1899, p. 203). The provision is:

"Any person or corporation, after first having obtained a license as provided for in this act, shall indicate locations for traps or pound nets made under such license, by driving at least three substantial piles thereon, which must extend not less than ten feet above the surface of the water at high tide, one of said piles to be driven at each end of the location claimed, and upon said terminal piles there must be posted the license number."

The findings of fact are, in substance, as follows: That the plaintiffs and defendants were qualified owners of annual pound net fishing licenses, duly issued by the state fish commissioner; that in October, 1898, defendant Lord discovered the location in controversy, and made soundings thereon to ascertain the depth of water; that the plaintiff Milligan, a day or two prior to the 20th of March, 1899, made soundings thereon; that both Lord and Milligan, in going upon the location in controversy, and making the soundings, did so for the purpose of ascertaining the fitness of the location for a pound net fish trap; that on the 20th of March, 1899, the plaintiffs went upon the location, and placed what is commonly known in the locality as a "shovedown," to wit, an end

pile, with a weight attached near the bottom of the same for the purpose of causing the said pile to stand upright in the water; that the said weight was sufficient to carry the butt of the pile to the bed of the Gulf of Georgia, in which said location is; that said shovedown was placed in the waters of the Gulf of Georgia at a distance of about 500 feet to the westward of the westward pile of the Alaska Packers' Association trap, and the shovedown extended above the water of said gulf at high tide a distance of about six feet; that plaintiffs posted on said shovedown, near the top thereof, license number 146, in black letters six inches in length, upon a white background, and placed two buoys, consisting of blocks of wood about two feet in length and nine or ten inches in diameter, to the westward of said shovedown, the first of said buoys being about 200 feet to the westward and the second being about 350 or 400 feet to the westward; that upon the westward buoy there was painted the license number 146 in black figures six inches in length upon a white background; that about five or ten minutes after the plaintiffs placed the shovedown and buoys upon the location in controversy the defendants came upon the location with a steamer and pile driver for the purpose of indicating said location by driving piles thereon, and were notified and warned by plaintiffs that plaintiffs claimed the said location, and had indicated the same by placing thereon the shovedown and buoys, together with the license thereon; that immediately thereafter the defendants drove three piles upon said location, the first or eastward of which was about fifty feet southerly from the shovedown; that such pile was a substantial pile, and firmly driven into the bed of the Gulf of Georgia, and extended about eight feet above the surface of the water at high tide; that the defendants placed

thereon near the top their license number, 198, painted in black letters six inches long upon a white background ; that defendants drove a second pile upon said location about 200 feet from said first pile, at a place a little north-west of the first pile, which said second pile was substantial in form and character, and was firmly imbedded in the bed of the Gulf of Georgia, and at high tide was two or three feet above the surface of the waters of the gulf; and drove a third pile of substantial form and character upon said location about 300 feet to the west-ward of the second pile, and nailed upon the second and third piles upright pieces of wood two by eight inches and about fifteen feet in length, and placed upon each of said uprights or splicings, near the top thereof, a board whereon was painted license number 198; that the shovedown which the plaintiffs placed in the waters was not sufficiently weighted to hold it stationary, and that by the action of the tide it was carried from the position in which it was first placed by the plaintiffs to a considerable distance to the southeast and out of the line of the buoys mentioned; that on the 25th day of March, 1899, plaintiffs went again upon the location, and replaced the shovedown which had been placed there on the 20th of March preceding with a second shovedown, which was placed 650 feet to the westward of the Alaska Packers' Association trap No. 1,571, and placed to the westward of said shovedown two additional shovedowns, the second or middle of which three shovedowns was about 300 feet to the westward of the first shovedown placed on the 25th, and the third or westward of said shovedowns was placed about 700 feet from the eastward or inshore shovedown; that each of said shovedowns so placed on the 25th of March by plaintiffs was more than ten feet above the surface of the waters of the Gulf of Georgia at that place

at high tide, and the easterly and westerly of said shove-downs had placed thereon near the top thereof, and more than ten feet above the surface of the waters of the Gulf of Georgia at high tide, the license number 146 painted in black letters as described hereinbefore; that none of said shovedowns were firmly imbedded in the bed or bottom of the Gulf of Georgia, but were held in place by a weight put near the bottom thereof, and resting on the bottom of the gulf; that one of said shovedowns floated away during the night of the 25th, after it was placed in position, and was not thereafter replaced until May 3, 1899; that thereafter, on the 26th day of March, 1899, the defendants drove three substantial piles upon the location; that said piles were firmly imbedded in the bed or bottom of the gulf, the first or easternmost being 650 or 700 feet westward of the westward pile of the Alaska Packers' Association trap No. 1,571; that the second of said piles was placed a little north of west and to the westward of said first pile about 300 to 350 feet, and the third of said piles was placed in a direction a little north of west of the second pile, and about 300 feet therefrom; that the first of said piles so placed by defendants on the 26th of March extended more than ten feet above the surface of the waters of the gulf at high tide, and had the license number 198 painted thereon; that the second or middle pile so driven on the 26th of March extended about six feet above the surface of the water of the gulf at high tide, and the defendants securely nailed thereto a timber two by eight about fifteen feet in length, and extending about eleven or twelve feet above the top of said pile, their license number, 198; that the third or westerly pile so placed by defendants on the 26th of March was about eight feet above the surface of the water of the gulf at high tide, and the defendants securely attached to the

pile a timber two by eight and about fifteen feet in length, which said timber so attached was about eleven or twelve feet above the top of the pile, and the defendants placed thereon their said license; that thereafter, on the 3d of May, 1899, the plaintiffs drove three substantial piles upon the location, which said piles were firmly imbedded in the bed of the gulf, the first being about 650 feet to the westward of the westward pile of the Alaska Packers' Association trap, and from fifty to seventy-five feet north of the easterly shovedown before mentioned, which said pile extended more than ten feet above the surface of the waters of the Gulf of Georgia at high tide, and that plaintiffs' said license was painted thereon; that the second pile so driven by plaintiffs on the 3d of May was upon the location about 300 to 350 feet and a little north of west of the first pile, and was more than ten feet above the surface of the water of the Gulf of Georgia at high tide; that the third pile so placed by the plaintiffs was on the line of the first and second piles, and was more than ten feet above the surface of the waters of the gulf, and had placed thereon near the top, and more than ten feet above the surface of the water at high tide, plaintiffs' said license; that thereafter, on the 23d of June, 1899, plaintiffs commenced the construction of a pound net fish trap on said location upon the line and direction of the three piles driven by them upon the 3d of May, 1899, and thereafter, in the early part of July, completed such fish trap at an expense of about $3,000; that twice or more during construction of the trap plaintiffs were warned by defendants that defendants claimed the said location by reason of having indicated the same in the manner hereinbefore found; that the plaintiffs fished their traps through the season until the early part of September, 1899, and throughout the sock-

eye salmon fishing season; that there are two seasons of fishing (the first, the sockeye, begun some years in June, and some years in July, and ending in August and the early part of September; and the cohoe season, which begins in the latter part of August or the early fall of the year); that on the sixth of September, 1899, while plaintiffs were fishing their trap, and before the institution of this suit, the defendants came upon the location, and began the construction of a pound net trap within 600 feet endwise and 2,400 feet laterally of plaintiff's trap. The sixteenth finding of fact is:

"That the plaintiffs Elwood and Milligan used all efforts that men of reasonable care, prudence, and diligence would have used to obtain a pile driver for the purpose of driving substantial piles in a substantial manner upon said location, and were unable to obtain such pile driver prior to the 3d day of May, 1899;"

and the seventeenth finding is:

"That the location of the defendants upon the grounds above described in all things conformed to the requirements of the statute, and that the action of the plaintiffs constituted an infringement upon the rights of the defendants, and interfered with the enjoyment of their property so acquired by valid location upon the fishing grounds above referred to; that the location of the plaintiffs is within 2,400 feet laterally and 600 feet endwise of the location of the defendants, and is within the distance prohibited by law."

Plaintiffs requested an additional finding that the plaintiff Milligan discovered the location in controversy, and that plaintiffs had, prior to the 20th of March, arranged for the use of a piledriver to drive the location piles upon the location, but were prevented from so doing by the acts of the defendants. This offered finding is clearly supported by the testimony. There is some

controversy between the witnesses as to the motives which influenced the defendants in procuring the pile driver after plaintiffs had engaged it to drive their piles on the 20th of March, 1899, but there is no controversy that the same pile driver which the defendants used to drive their piles on the 20th of March had been previously engaged from the person in charge of the pile driver to go out on the location and drive the piles for plaintiffs. The only exception to the findings of facts is taken by appellants to finding No. 17. Appellants except to the conclusions of law.

It is apparent that the conclusion of the learned superior court is based upon a strict construction of the statutory requirements to indicate the location of a fish trap. Such conclusion necessarily excludes the consideration of any rights accruing from actual notice of location. From a careful examination of all the findings of facts it seems that the seventeenth finding, excepted to by appellants, is inconsistent with the specific facts found in No. 6 and No. 9. The facts specified in finding No. 6 show that defendants did not, on the 20th of March, 1899, —their first attempt to locate,—put in piles conforming to the statutory requirements; and finding No. 9 shows that on the 26th of April following, when defendants again indicated notice of location, while they more nearly conformed to the requirements of the statutory notice, still the compliance was not exact. They spliced their piles to make them high enough to reach ten feet above high tide of the gulf. It is true plaintiffs did not comply in form with the statutory requirements on the 20th of March, when they endeavored to give notice of location. Their efforts on the 25th of April following were further in the direction of substantial compliance; but not until the 3d of May, 1899, did either of the parties make an

actual and literal compliance with the terms of the statute, when the plaintiffs drove piles in accordance therewith. The theory presented by counsel for respondents seems to be that, while there was not a literal compliance with the statute regulating the notice of location, yet comparative compliance should be the rule, and the one more nearly conforming to the letter of the statute should have the preference. Our statutes relating to rights obtained under the pound net fishing license and the location and construction of traps thereunder are in many of their aspects novel. Learned counsel have not favored us with authority upon their construction. It seems that some fair analogies may be drawn with reference to the location of a fish trap from precedents in the location of mines, and perhaps also from locations on the public lands of the United States. Prior to the provisions of the statute indicating location of a pound fishing net it seemed to be understood that actual notice was sufficient to establish rights to a particular location. That was by taking possession of the water, and with reasonable diligence constructing the appliances for fishing. This is mentioned in *Walker v. Stone,* 17 Wash. 578 (50 Pac. 488), and it was there observed:

"The legislature had the power to license fishing, and to give exclusive control for a reasonable distance of the water after the construction of a net or other fixed appliance for fishing, and for the limited period of one year."

In *Erhardt v. Boaro,* 113 U. S. 527 (5 Sup. Ct. 560), it seems the discoverer of a mining claim had driven a stake at the point of discovery. The trial court instructed the jury that the notice posted on the stake was deficient, and under it the locator could not claim any more than the place in which the stake was planted. The supreme

court, however, ruled that this was error, and, in effect, that the written notice posted on the stake at the point of discovery informed persons subsequently seeking to excavate or open the lode or vein that the locator claimed the whole extent along its course which the law authorized him to take, and this notice was sufficient to hold the claim until the locator had made his excavation and posted the notice required by law; that a party entering upon the lode before the excavation could be made and legal notice posted was a trespasser, and acquired no right. In the case of *Doe v. Waterloo Mining Co.,* 17 C. C. A. 190, 70 Fed. 455, the court expresses the view that a reasonable time is allowed after the discovery of the lode to perfect the location prescribed by the law, and there observed:

"There is no doubt but the discoverer of a mineral vein should have a reasonable time after the discovery of his vein in which to complete his location embracing the same."

In *Omar v. Soper,* 11 Colo. 380 (18 Pac. 443, 7 Am. St. Rep. 246), the court observed:

"To hold that the miner, as soon as he discovers a lode, must immediately stake the territory which he is entitled to claim thereon, in order to protect it from the invasion and claims of other persons learning of his find, would be an unreasonable, if not an impossible, requirement."

In *Murley v. Ennis,* 2 Colo. 300, it is said:

"From the moment of commencing the labor of development with the *bona fide* purpose to complete it, and so appropriate the mine, the party has a possession in fact, and for the time being a right to retain that possession."

See, also *Patterson v. Hitchcock,* 3 Colo. 533, where it is mentioned that "what is to be regarded as a reason-

41—26 WASH.

able time when the facts are undisputed is a question of law." The general principle that no right is initiated by trespass is well understood. It has been so repeatedly enunciated by the supreme court of the United States relative to possession of the public lands. It is true that in public land cases, as in *Atherton v. Fowler,* 96 U. S. 513, and others, the facts have shown an actual possession of land; but the nature of the possession of a fishing claim must be taken into consideration in applying the principle. The plaintiffs were first actually out upon the waters in controversy. They had erected a pile, and posted their licenses, and by word of mouth had asserted to the defendants their location. Certainly defendants had as full and complete notice of the claim of the plaintiffs as if the statutory piles had been standing there complete. From the moment that the plaintiffs entered upon the waters in controversy and erected their first pile there was no interval in which they were not diligently asserting their location. As has been observed, the first notice of location conforming to the letter of the statute was made by plaintiffs on the 3d of May. However, we do not wish to put this decision upon the ground of comparative compliance with the statutory notice, but rest it rather on the principle that the acts done upon the waters in controversy and the actions of the plaintiffs were equivalent to such notice to the defendants, and, having followed such acts up with due diligence, the plaintiffs are entitled to their location.

The decree is reversed, and the cause remanded to the superior court, with directions to enter a decree adjudging the right to the location in controversy to the plaintiffs, and enjoining any interference by defendants with the rights to the fishing trap constructed and operated by the plaintiffs.

DUNBAR, FULLERTON, ANDERS and MOUNT, JJ., concur.