[No. 7234. Decided August 4, 1908.]

## C. S. VAIL, *Appellant*, v. HENRY McGUIRE *et al.*, *Respondents.*[1]

EVIDENCE—JUDICIAL NOTICE—GEOGRAPHICAL FACTS. The court will take judicial notice that the Snohomish river is a tributary to Puget Sound, and of the ebb and flow of the tide below the city of Snohomish.

FISH—PUGET SOUND—ESTUARIES—FISHING LOCATIONS — STATUTES —APPLICATION. Fishing locations within the ebb and flow of the tide in Snohomish river are in the waters of Puget Sound, within our statutory definitions of Puget Sound, which include all portions of tide waters emptying into the Straits of Fuca, and the bays, inlets, streams, and estuaries thereof (Bal. Code, § 7381) or emptying into the bays and estuaries thereof (Bal. Code, § 3343); an estuary being that portion of the lower course of a river subject to tides.

SAME—FISHERIES—LOCATIONS—REQUISITES—SURVEYS—RIGHTS ACQUIRED. Laws 1895, p. 255, § 2, requires that an accurate survey and map be prepared and filed of set-net fishing locations in the waters of Puget Sound, and a locator failing to comply with the provisions of the statute is not entitled to an injunction to protect his location, as the same constitutes such property as may be held only by continued compliance with statutory regulations.

Appeal from a judgment of the superior court for Snohomish county, Honorable John Sandidge, judge *pro tempore*, entered August 26, 1907, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Affirmed.

*E. C. Dailey*, for appellant.

*O. T. Webb*, for respondents.

[1] Reported in 96 Pac. 1042.

HADLEY, C. J.—This is an action to enjoin the defendants from interfering with two set-net fishing locations, claimed by the plaintiff. The cause was determined by the trial court upon demurrer to the complaint, the demurrer being sustained and the action dismissed. The complaint alleged that, in June, 1907, the plaintiff posted the numbers of his licenses on the bank of the Snohomish river, in Snohomish county, describing the place of one location as "at a point in said river opposite and just above the land owned by the defendant Henry McGuire, and on the right of way of the county road, same being on the opposite side from a point known as Mudgett's mill and about three miles down the river from the city of Snohomish in said county and state." The other location is described with reference to the first as being "further down the said river and opposite land owned by the said defendant Henry McGuire, Sr." It is alleged that, on or about the 30th day of July, 1907, the plaintiff began fishing with the nets at the aforesaid locations, and that on the 11th day of August, 1907, the defendants, with full knowledge of all the plaintiff had done in the premises, forcibly took possession of the fishing locations, and that in like manner they still withhold the possession thereof from the plaintiff. We have stated the entire description of the locations above, and it will be noted that there is an entire absence of averment that any surveys of the locations were made by a competent civil engineer, or that location maps containing plats or descriptions of the locations sufficient for their identification on the premises, were made, certified by such engineer and by the occupant or claimant, and filed in the office of the county auditor of Snohomish county, and also a copy with the fish commissioner of the state of Washington. The trial court, as the briefs seem to concede, held that the absence of any averment as to the survey, maps, and filing rendered the complaint demurrable, and showed no right in the plaintiff to demand injunctive relief. The plaintiff has appealed.

Reference to § 2, p. 255, *et seq.*, of the Laws of 1895, dis-

closes the imperative necessity for an accurate survey of all set-net locations, and the preparation and filing of maps as above indicated. That section is an amendment to § 9, p. 203, of the Laws of 1899. The act of 1899 was a general one, relating to the propagation of the food fishes and regulating the catching thereof in the waters of this state. Appellant contends that the provisions of that statute, and also of the amending statute of 1905, by their terms were intended to be confined to the waters of Puget Sound, and that they do not apply to tributaries thereof, such as the Snohomish river. He therefore concludes that the statutory requirements as to survey of locations do not apply to the locations in question. The amending statute of 1905, providing for surveys, does appear to be specifically limited to fishing locations "in the waters of Puget Sound in the state of Washington." The court takes judicial notice of the fact that the Snohomish river is tributary to Puget Sound, and that the described locations, being three miles below the city of Snohomish, are within the area of the ebb and flow of the tide.

"Courts have judicial knowledge of the prominent geographical features of the territory over which, or state in which, they exercise jurisdiction and of the country at large; the location of cities outside the state, at least if they are well-known commercial centers, and their situation as related to tide water. Geographical facts of common knowledge relating to cities of commercial importance within the jurisdiction of the court need not be proved. . . . Courts take judicial notice of the existence and location, within the states in which they exercise jurisdiction, of great lakes and rivers and their relation to county or city lines and to the distribution of population; of the navigability of streams constituting great national highways of commerce as well as of smaller streams within the jurisdiction, and other notorious facts concerning the latter." 16 Cyc. 858, 862.

Inasmuch as the locations are within the area of tide water, are they within Puget Sound, so as to come within the scope of the statute? Respondents call our attention to a statutory

definition of Puget Sound, as found in Bal. Code, § 7381. It is as follows:

"For the purpose of more clearly defining the provisions of the last section, all that portion of the tide waters emptying into the Straits of Fuca, and the bays, inlets, streams, and estuaries thereof, shall be known and designated in this article as Puget Sound."

This statute was passed in 1890, and it will be seen that the definition specifically includes streams tributary to the waters emptying into the Straits of Fuca, and is unlimited as to any particular part or parts of the streams. The section specifically refers, however, to the previous section, which makes it unlawful at certain times to take salmon in any of the streams flowing into Puget Sound. The manifest intention of the two sections is to protect the salmon for propagating purposes, and this subject necessarily includes prohibitive rules in the purely fresh water parts of the streams as well as those directly affected by the tide and salt water. While it may be argued that the above definition broadly includes the whole of tributary streams, and declares them to be actual parts of Puget Sound, yet when we consider the connection in which the definition is used, such a construction may be too broad for application to the subject-matter before us. A statutory definition of Puget Sound of longer standing than the above is found in the Code of 1881, § 1174, and in Bal. Code, § 3343 (P. C. § 1820). It is as follows:

"For the purpose of more clearly defining the provisions of this article, all that portion of the tide waters emptying into the Straits of Fuca, and the bays and estuaries thereof, shall be known and designated as Puget Sound."

It will be observed that streams are not mentioned specifically in the above definition, but the "bays and estuaries" of the tide waters are included. The Century Dictionary defines an estuary as follows: "That part of the mouth or lower course of a river flowing into the sea which is subject to tides; specifically, an enlargement of a river channel toward its

mouth, in which the movement of the tide is very prominent." Under the above definition of an estuary, we think appellant's locations are within the estuary of the Snohomish river, and certainly, when both the statutory definitions of Puget Sound, quoted above, are considered together, it must be held that appellant's locations are included in its waters and are subject to the fishing regulations provided therefor, which include the requirements for the survey of locations provided by the statute of 1905.

Inasmuch as the appellant has failed in essential particulars to comply with the law entitling him to hold these fishing locations, he has no standing to ask injunctive relief against others who seek to occupy them. He does not show any other right by which he may hold them, and, indeed, it may be conceded that fishing locations of this character constitute such property as may be held only by continued compliance with the statutory regulations governing the subject.

For the foregoing reasons we believe the judgment was right, and it is affirmed.

FULLERTON, MOUNT, and ROOT, JJ., concur.