[No. 18210. Department One. February 7, 1924.]

# L. M. DAVIS, *Appellant*, v. CHRIS OLSEN, *Respondent*.[1]

FISH (7, 9)—FISHING LOCATIONS—REQUISITES—MAPS AND SUR-
VEYS—FILING—PRIORITY OF RIGHTS. As between overlapping fishing
locations, a claimant who first fully complies with Rem. Comp. Stat.,
§ 5679, requiring a survey and the filing of maps, has a superior
right as against another whose claim was prior in time, but who
failed to perfect the claim by filing a map, as required.

SAME (7, 9)—FISHING LOCATIONS—FEDERAL PERMITS—RIGHTS
ACQUIRED. A federal permit to maintain a fishing location in a
navigable stream does not assume to give any right to take fish,
against the will of the state, and does not affect the rights of par-
ties under state laws.

Appeal from a judgment of the superior court for
Pacific county, Hewen, J., entered May 15, 1923, in fa-
vor of the defendant, in an injunction proceeding, tried
to the court. Affirmed.

*Fred M. Bond,* for appellant.

*Welsh & Welsh,* for respondent.

PARKER, J.—The plaintiff, Mrs. Davis, commenced
this action in the superior court for Pacific county,
seeking an injunction restraining the defendant, Olsen,
from maintaining his pound net fish trap within what
she claims to be the statutory prohibited proximity of
her pound net fish trap in the waters of the Columbia
river, in Pacific county. The defendant filed in the
cause his answer and cross-complaint seeking the same
relief against the plaintiff. A trial upon the merits
resulted in a judgment awarding to the defendant the
relief prayed for by him, adjudging him to have su-
perior right to his trap location, and that the plaintiff
be compelled to cut off 275 feet from the southerly end
of her trap, to which extent it encroaches upon the

[1] Reported in 222 Pac. 891.

statutory prohibited proximity to his trap location. From this disposition of the cause in the superior court, the plaintiff has appealed to this court.

Each party is claiming superior right as against the other, under our fisheries code of 1915, which, in so far as we need here notice its provisions, reads as follows:

"Sec. 27.

"(a) Any person, firm or corporation occupying or desiring to occupy any fishing location where it may be lawful to construct a pound net, trap or set net in the waters of the state, shall cause such location to be accurately surveyed by a competent civil engineer, unless a survey thereof has already been made, in which event such existing survey may be used, and shall cause a location map to be made of such location from the actual survey thereof, which shall contain a plat and description of said fishing location sufficient for its ascertainment and identification on the premises. It shall also contain a certificate by the claimant, or by his agent or attorney, stating that he claims the fishing location shown thereon, specifying the date and number of the license under which the same is held and containing the postoffice address of the claimant. Such map, with the certificate thereon, shall be filed in the office of the county auditor of the county in which such fishing location is situated, and a duplicate copy thereof in the office of the commissioner. From and after the date of filing in the office of the county auditor, such map shall constitute full and complete notice that such location is owned, held, occupied and claimed by the person, firm or corporation designated thereon as the claimant. . . .

"From and after filing such map the claimant of the location thereon shown, his heirs, administrators, successors and assigns shall have the exclusive right to hold, occupy and fish such location, to renew the license therefor, and to mortgage, sell and transfer the same during the time that he or they in other respects shall comply with the law pertaining thereto.

"(b) It shall not be necessary to file any map or plat of any location heretofore made under existing laws in

any case where any map has heretofore been filed: *Provided*, That all pound net, fish trap, set net or other fishing locations heretofore made by locators or owners thereof in accordance with existing laws shall .be unaffected and unimpaired by any of the provisions of this section, and any location legal when established shall continue valid under the provisions of this act and the locators or owners of such previously established locations shall continue to occupy, own, hold and enjoy the same, and may mortgage, sell, transfer and lease the same, with the right to renew their licenses therefor in the same manner and with the same legal effect as though said locations had been established under the provisions of this act.  Any person, firm or corporation being the owner, holder or occupant of any trap or pound net location in the Columbia river, Grays Harbor, or Willapa Harbor, shall, within 90 days after this act takes effect, file with the auditor of the county in which their said locations are situated, a location map as hereinbefore provided in this section, and a copy of the same in the office of the commissioner.

"From and after filing such map the claimant of the location thereon shown, his heirs, administrators, successors and assigns shall have the exclusive right to hold, occupy and fish such location, to renew the license therefor, and to mortgage, sell, lease and transfer the same during the time that he or they in other respects shall comply with the law pertaining thereto.

"Sec. 31.   No lead of any pound net, trap, fish wheel, or other fixed appliance used for catching salmon in the Columbia river and its tributaries, Willapa Harbor and its tributaries, and Grays Harbor and its tributaries shall exceed eight hundred feet in length, and there shall be an end passageway of at least thirty feet and a lateral passageway of at least nine hundred feet between all such pound nets, traps, fish wheels, or other fixed appliances. . . ."

Laws of 1915, ch. 31, pp. 76, 78, §§ 27, 31 (Rem. Comp. Stat., §§ 5679 and 5683) [P. C. §§ 2436, 2440].

For convenience of reference hereafter we have let-

tered into two separate subdivisions the provisions of
§ 27 above quoted.

In November, 1921, Olsen caused his claimed trap lo-
cation to be surveyed and a location map thereof to be
made, which map he caused to be filed in the office of
the auditor of Pacific county on November 22, 1921.
He caused a duplicate copy of such map to be filed in
the office of the state fish commissioner on November
28, 1921. All of which was done in strict accordance
with the above quoted statutory provisions. There-
after in due time he constructed his trap, in length 470
feet northerly and southerly, upon the location so sur-
veyed and mapped. In June, 1921, Mrs. Davis caused
her claimed trap location to be surveyed and a location
map thereof to be made, but did not cause such map to
be filed in the office of the auditor of Pacific county
until February 2, 1922, which date, it will be noticed,
was some two and a half months after Olsen had caused
his location map to be filed in the office of the county
auditor. She had filed a duplicate of her map with the
state fish commissioner on August 2, 1921. She had
also constructed her trap approximately according to
her survey and map location, in length 770 feet north-
erly and southerly, before Olsen had caused to be made
and filed his survey and map location. The two traps
after construction lay approximately parellel with each
other, being laterally about 300 feet apart and overlap-
ping each other 245 feet on the northerly end of Olsen's
trap and on the southerly end of Mrs. Davis' trap;
Olsen's trap being to the south and west and Mrs.
Davis' trap being to the north and east. The result
was that no end passageway of at least 30 feet and no
lateral passageway of at least 900 feet was left between
the two traps as required by § 31 of the fisheries code
above quoted.

Our problem is as to which one of these parties has superior right over the other in so far as the statutory requirements of 30 feet end passage and 900 feet lateral passage between them are concerned. The concluding paragraph of our subdivision (a) of § 27 of the fisheries code, above quoted, seems to conclusively answer this question in favor of Olsen, since he was the first to comply with the provisions of the statute perfecting his right to his claimed location; that is, he was the first to file his map in the office of the county auditor, which, as we read the statute, perfected his right in that particular. Our subdivision (b) of the above quoted portion of § 27 of the fisheries code may, when read superficially, seem to render the filing by Mrs. Davis of her survey and map location with the county auditor as being unnecessary in view of the prior actual construction of her trap; but a critical reading of that subdivision renders it plain, we think, that in order to perfect her right in that particular she was required to file her survey and map location in the office of the county auditor, and until she did so her right in that particular was not perfected, since more than ninety days had elapsed after the passage of the fisheries code of 1915. It is only after the filing of such survey and map with the county auditor that she would become entitled to her location superior to the rights of Olsen, in so far as the end and lateral passageways between the two traps are concerned.

Counsel for Mrs. Davis cite and rely on the decision in *Elwood v. Dickinson*, 26 Wash. 631, 67 Pac. 370, which was a controversy relative to conflicting claimed fishing locations under § 9, ch. 117, p. 194, Laws of 1899, under which fixed fishing location rights were determinable, not by survey, mapping and recording in the office of the county auditor of such locations, but by

evidence of claim of such locations appearing at the locations. In *Vail v. McGuire,* 50 Wash. 187, 96 Pac. 1042, involving conflicting claimed locations under ch. 140, Laws of 1905, providing for the evidencing of such claims by survey, mapping and location substantially as under the fisheries code of 1915, it was held in substance that fishing locations become the property of the locators only by continued compliance with the statutory regulations governing the subject, which regulations, we have noticed, were, in so far as survey, mapping and recording are concerned, in substance the same as under the fisheries code of 1915.

Contention is made in behalf of Mrs. Davis rested upon the fact of the prior actual construction of her trap. What we have already said touching the necessity of evidencing the claim of the locator by survey, mapping and recording thereof in the office of the county auditor, we think, renders such construction of no avail to Mrs. Davis.

Some contention is made in behalf of Mrs. Davis rested upon a permit from the Federal government to occupy her claimed location. The evidence in this case is not very satisfactory as to whether Mrs. Davis or Olsen would have the superior right, viewed alone from the standpoint of their permits issued for their respective locations by the Federal government. That, however, we think, is of no moment in our present inquiry, since permits of this nature from the Federal government have only to do with possible obstruction to navigation and are of no controlling force in so far as the respective rights to claimed fishing locations under the state statute are concerned. *Muller v. Apex Fish Co.,* 57 Wash. 140, 106 Pac. 625. The Federal government may prohibit or give its assent to the maintenance of fixed structures in navigable waters, but it

does not assume to give any right to take fish from even navigable waters within the state, against the will of the state.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.