[Civ. No. 7557. First Appellate District, Division One.—September 8, 1930.]

COUNTY OF ALAMEDA, Petitioner, v. E. F. GARRISON, as Auditor, etc., et al., Respondents.

Earl Warren, District Attorney, Frank M. Ogden, Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Petitioner.

John R. Ober for Respondents.

JORGENSEN, J., *pro tem.*—The County of Alameda was granted an alternative writ of mandate on its petition to the Supreme Court of this state, directed to said defendants, as auditor and treasurer, respectively, of said county, commanding them to comply with the order of the board of supervisors of said county to charge and pay the expenditure represented by a certain warrant out of the "Estuary Bridge Bond Fund of Said County," or to show cause before this court why they had not done so.

Respondents answered the petition for the writ, and the matter has been submitted to this court on an agreed statement of facts.

On August 14, 1917, the electors of Alameda County, at a special election, authorized the incurring of a bonded indebtedness of said county in the sum of $900,000 to build a bridge across the estuary known as Oakland harbor, to connect the cities of Oakland and Alameda, including the acquisition of necessary land for construction and use of said bridge. Throughout the resolution calling the election and all other official proceedings preliminary to said election, the purpose for which the funds sought to be raised by the proposed bond issue were to be raised was uniformly designated as "obtaining money to build a bridge across the estuary known as Oakland Harbor, to connect the cities of Oakland and Alameda," and nowhere in any of said official proceedings was any reference made to any more specific location of the proposed bridge than as above specified.

At no time prior to the election did the board of supervisors or any other official or board issue any campaign literature, circular or document of any description whatsoever advocating the passage of the said bond issue.

The cities of Oakland and Alameda are separated from each other by a navigable body of water known at various

times and in various quarters by the following names: San Antonio estuary, Oakland estuary, Oakland harbor, Inner harbor and Tide canal and Alameda estuary. Said body of water, hereinafter referred to as the estuary, is roughly seven miles in length, extending in a general east and west direction from San Leandro Bay on the east to another point in San Francisco Bay proper at the end of the moles of the Southern Pacific Railroad Company and Western Pacific Railroad Company on the west. Said estuary constitutes what is commonly known as Oakland's inner harbor.

There were, at the time of said election, four drawbridges across the inner harbor, consisting of the Webster Street bridge across the estuary proper, and the Park Street, Fruitvale Avenue and High Street bridges across that portion of said body of water commonly referred to as the tidal canal. This so-called tidal canal connects the inner harbor with San Leandro Bay and is nearly two miles in length and about 300 feet in width and 18 feet deep at mean low tide at the present time. At the time of the election it appears that it was neither so wide nor so deep and that dredging has been done since the election. The War .Department of the federal Government now proposes to dredge the same to a greater depth, contingent upon the removal or satisfactory alteration or replacement of the present bridges, including said Park Street bridge. The so-called tidal canal at the present time can be and is used for purposes of navigation by coastwise vessels, at least at high tide or when lightly loaded, wharves are constructed along this strip of water at various places where vessels load and unload.

The term ''Estuary'' was in August, 1917, and for some time prior thereto and ever since has been popularly and generally used among the people of Alameda County to designate the entire body of water from San Leandro Bay to the end of the jetties at the railroad termini, thus including the tidal canal. That the popular meaning and understanding of said term ''Estuary'' throughout Alameda County is and was at said times that continuous stretch of water from said San Leandro Bay to the end of said jetties. That it is not and was not at said times within the common knowledge of the people of Alameda County that the said tidal canal, over which said Park Street bridge stands, was

not originally and naturally a part of said estuary, and that even those persons who have some intimate knowledge of the history of Oakland's inner harbor and who understand the partly artificial character of said tidal canal, customarily refer to the tidal canal as a part of the estuary. That the terms "Estuary" and "Oakland Inner Harbor" are now and were at said times used synonymously among the people of Alameda County, and are and were then considered by them as designating one and the same thing.

That for several months immediately prior to said election the board of supervisors contemplated the construction of a new bridge at Webster Street. That there was at that time a bridge at that location, said location being approximately two and five-tenths miles west of the Park Street bridge hereinabove referred to. That said Webster Street bridge was at that time in a bad state of repair, had been declared by the War Department of the United States Government a menace to navigation, and said War Department had fixed a time limit within which said bridge would have to be torn down and replaced by a modern structure with greater clearance for vessels and greater speed and safety of operation.

At said time the other three bridges hereinbefore mentioned, including the Park Street bridge, were likewise in a poor state of repair and inadequate in many respects to handle the vehicular traffic over them and were likewise obstructions to navigation. Owing to its location nearer the mouth of the estuary, however, a considerably greater volume of water traffic passed the Webster Street bridge than any of the others, thus making the inadequacy of that structure more aggravated than that of any of the others.

At the present time the inadequacy of the Park Street bridge is, if anything, more aggravated than was that of the Webster Street bridge at the time of said election.

Subsequent to the election of August 14, 1917, all proceedings looking toward the construction of new bridges were suspended due to the economic conditions of the time resulting from the war. When the bridge problem revived after the war, the idea of constructing a tube rather than a bridge at or near Webster Street had gained favor, and the George A. Posey tube was thereafter constructed and

the old Webster Street bridge torn out, and the project of a new bridge at that point abandoned.

Said election was regular in all respects. A portion of the bonds authorized were regularly sold for $201,582, plus interest, and deposited in the "Estuary Bridge Bond Fund of Said County," the balance of the authorized bonds were, after a number of years, regularly canceled and destroyed. At divers times since said sale expenditures have been made from said fund for the purchase of property and rights of way for construction and use of a bridge across the estuary at and adjoining Webster Street in contemplation of a new bridge at Webster Street. The sum of $76,210.88, now in said fund, is the balance of the proceeds of said sale of bonds. The board of supervisors proposed to use said balance in the construction of a new bridge at said Park Street, and have regularly ordered preliminary test borings, and the warrant for $240 described in the petition has been ordered paid out of said fund for services in test borings rendered by the payee on said project.

The respondents refuse to charge to and pay out of said fund the amount of said warrant.

The sole question to be decided, under the agreed statement of facts, is, therefore, this: Is the estuary bridge bond fund, being the balance of the proceeds of the sale of bonds voted at the special election of August 14, 1917, for the construction of "a bridge across the estuary known as Oakland harbor to connect the cities of Oakland and Alameda," now available for the purpose of constructing a bridge across the body of water above described at Park Street?

For the answer to that question we must look to the order calling the election and the proposition as printed upon the ballot. ▇ The order and the ballot are identical in stating the purpose for which the proceeds of the bonds are to be used. On a similar proposition the Supreme Court said: "The order calling the election and the ratification of that order by the electors constituted a contract between the state and the individuals whose property was thereby affected. (*Peery* v. *City of Los Angeles,* 187 Cal. 753 [19 A. L. R. 1044, 203 Pac. 992].) After the contract had been made it could not be altered by one of the parties thereto." (*O'Farrell* v. *County of Sonoma,* 189 Cal. 343, at 348 [208 Pac. 117, 119].) In the same case the Supreme Court said:

"When the board was contemplating a bond issue on the 16th day of April, 1919, it had the statutory right to make its order just as broad, and just as narrow, and just as specific as it was willing to be bound, so long as the provisions of the statute were complied with." In that case the board had specifically defined the length of the road, specifically located its terminals and the court properly held it was not a matter of discretion and the board must build the road as specifically described.

In construing the present contract, if it is clear and explicit and free from absurdities, the language of the instrument itself is to govern. (Civ. Code, sec. 1638. When we consider the language we find that the word "Estuary" must have a local or otherwise particular and significant meaning, because the meaning as given by the dictionaries approved by the courts does not correctly define the body of water involved here. The case of *Vail* v. *McGuire*, 50 Wash. 187 [96 Pac. 1042], adopts the following definition from the Century Dictionary: "The part of the mouth or lower course of a river flowing into the sea which is subject to tides; specifically, an enlargement of a river channel toward its mouth, in which the movement of the tide is very prominent." Webster's New International Dictionary (1920) defines "estuary" as "A passage, as the mouth of a river or lake, where the tide meets the river current; more commonly, a narrow arm of the sea at the lower end of a river; a firth." The term estuary is therefore apparently a misnomer here, as there is no river flowing into the bay at this point. Therefore, the provisions of section 1861 of the Code of Civil Procedure have particular application here and the words can be shown to have a local or particular significance. As the people of Alameda County and all parties to this contract understood the word "estuary" to include the so-called tidal canal, and the words "Oakland Inner Harbor" to be synonymous therewith, it cannot be doubted that the construction of a bridge at Park Street over this body of water would be the construction "of a bridge across the Estuary known as Oakland Harbor to connect the cities of Oakland and Alameda," and within the very wording used throughout the bond proceedings. Here the board chose to use broad language. Undoubtedly they wanted some latitude and discretion as to

the location of this bridge. The people were willing to give it to them, and so voted, with full knowledge that the board did not choose to limit themselves to a particular location.

Previous and contemporaneous transactions between the parties may be properly taken into consideration to ascertain the sense in which particular parties used particular terms where parties have not incorporated all of the terms of their agreement or in case of fraud or mistake, or are necessary to explain the contract, where it is doubtful, uncertain or ambiguous, but none of those elements enter into this proposition.

Let the peremptory writ of mandate issue as prayed for.

Tyler, P. J., and Cashin, J., concurred.