[Civ. No. 5854. Fourth Dist. Nov. 27, 1957.]

COUNTY OF SAN DIEGO, Petitioner, v. J. C. PERRIGO, as Auditor and Controller, etc., Respondent.

John W. Cranston and John W. McInnis for Petitioner.

James Don Keller, District Attorney (San Diego), and Bertram McLees, Jr., Deputy District Attorney, for Respondent.

STONE, J. pro tem.*—At a special election held November 2, 1954, more than two-thirds of the qualified voters of the county of San Diego approved a proposition to incur a bonded indebtedness in the principal sum of $8,400,000 for the purpose of constructing, furnishing and equipping buildings to provide quarters for superior and municipal courts, the county jail and county departments and officials. The project was delayed by the usual architectural and engineering work. During the period of delay the need for additional facilities arose by reason of the increased population and volume of official business in the county of San Diego. At the time of the election there were eight departments of the superior court and six departments of the municipal court, but by September 30, 1957, the state Legislature had increased the number of departments of the superior court to 13, and of the municipal courts to nine. On that date the Board of Supervisors of the County of San Diego adopted a resolution to redesign the courthouse and jail buildings to provide for the additional needs of the superior and municipal courts, including one additional traffic court, one additional arraignment court, a separate juvenile court, and quarters for the grand jury. It also provided for an enlarged county jail, quarters for the district attorney and veterans officer, and a redesign of the basement for future expansion. The resolution sets forth that the additional facilities will cost $3,517,680 in addition to the bond issue of $8,400,000; that the additional funds can be supplied from the general fund of the county of

*Assigned by Chairman of Judicial Council.

San Diego; that the amount required from the general fund for the current fiscal year is one million dollars. As part of the resolution the respondent herein, as auditor and controller of the county of San Diego, was ordered to transfer from the general fund of the county of San Diego to the San Diego Courthouse-Construction Fund the sum of one million dollars. Respondent served a written refusal to comply with the order upon the board of supervisors. This proceeding in mandate followed the refusal of the auditor-controller to act.

Respondent does not deny that there are ample funds available in the general fund to permit the transfer of one million dollars to the San Diego Courthouse-Construction Fund. There is no contention that article XI, section 18 of the state Constitution limiting the obligation which a board of supervisors may incur is being violated, nor is it charged that the board acted in bad faith. Respondent further concedes that had the board of supervisors proceeded with construction in 1954, using the $8,400,000 authorized by the bond election, the county could at this time build an addition or annex to such courthouse to meet present needs and use the money in the general fund for that purpose. Respondent contends, however, that the bond issue constituted a contract between the board and the electors, and therefore the board must build the type of buildings specified on the ballot proposition.

Without question the election created a contractual relation between the electors and the supervisors. (*O'Farrell* v. *County of Sonoma*, 189 Cal. 343, 348 [208 P. 117]; *City of San Diego* v. *Millan*, 127 Cal.App. 521, 534 [16 P.2d 357].) The terms of the contract are contained in the ballot proposal approved by the electors which reads as follows:

"SAN DIEGO COUNTY BOND PROPOSITION. Shall the County of San Diego incur a bonded indebtedness in the principal sum of $8,400,000 for the purpose of the construction, furnishing and equipping of buildings (including clearing of the site for the proposed buildings) to constitute a county courthouse and county jail, said buildings to provide quarters for the Superior and Municipal Courts, the county jail, and county departments and officials, and to be located on the site of the present courthouse and county jail and on land adjacent thereto?"

The description of the buildings to be constructed is broad and general and contains no fixed plan or building program. The proposed changes specified in the resolution of the board of supervisors dated September 30, 1957, do not

violate the terms of the contract in that respect. (*El Dorado Irr. Dist.* v. *Browne,* 216 Cal. 269 [13 P.2d 921]; *County of Alameda* v. *Garrison,* 108 Cal.App. 122, 127 [291 P. 464].)

■ Respondent also urges that the board's proposal to spend more than the $8,400,000 voted at the bond election violates the terms of the contract. The proposition as it appeared on the ballot contained no statement or condition limiting the expenditure for the proposed county buildings to the amount of the bond issue. Respondent recognizes this fact as he asks the court to imply such a term or condition as a logical interpretation of the ballot proposition. He argues that such an interpretation of the contract is necessary to protect the taxpayers from a burden they did not voluntarily agree to assume. ■ The Supreme Court of California has held that the board of supervisors of a county is required by law to provide adequate quarters for superior and municipal courts (*Simpson* v. *Hite,* 36 Cal.2d 125, 129 [222 P.2d 225]; *County of Los Angeles* v. *Byram,* 36 Cal.2d 694, 698 [227 P.2d 4].) This duty is mandatory, explicit and imposed by law. A provision in a contract designed to prevent the board of supervisors from performing that duty would be contrary to law and unenforceable. For the same reason a court may not imply a restriction limiting the board to the amount of money voted in the bond election in providing necessary quarters for superior and municipal courts, traffic court, arraignment court, juvenile court and the grand jury. The Supreme Court has even held that an obligation imposed upon the county by law to provide quarters for the courts is not an indebtedness or liability within the meaning of the debt limitation provisions of Constitution article XI, section 18. (*County of Los Angeles* v. *Byram, supra,* p. 698.)

■ With respect to the jail, the district attorney's office, the veterans office and the change of basement design to provide for future needs, these facilities were included in the proposition submitted to the voters. While they are not obligations expressly imposed by law, they are provided by the board of supervisors as a part of its general administrative duties. The distinction between the general duties of a board of supervisors and those expressly imposed by law is recognized by the Supreme Court in *County of Los Angeles* v. *Byram, supra,* at page 700. The question, therefore, is whether or not a restrictive limitation should be implied by the courts for the protection of the taxpayers as to the quarters for offices other than those which are an integral part of the

superior and municipal courts. The people of the state of California, by article XI, section 18 of the California Constitution, have regulated, or limited the indebtedness which the board of supervisors of any county may incur. That provision was enacted to protect the public in the very respect respondent now asks protection by an implied condition in the contract. Article XI, section 18, reads in part as follows:

"No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof. . . ."

There is no contention that the board of supervisors in the instant case is exceeding this constitutional limitation. ■ Where the people have anticipated a need to regulate a legislative or administrative body for the protection of the public and have enacted a law to achieve that purpose, the courts will not, in the absence of an express agreement, imply a more restrictive interpretation of a contract coming within the purview of such constitutional enactment.

■ In this case the narrow construction urged by respondent would work to the detriment of the people sought to be protected. The need presently exists, and to build an inadequate building for the amount of the original bond issue would simply mean that immediately after completion of the building, or perhaps while still in the course of construction, an addition or annex would have to be commenced. The use of funds which are currently available and legally expendable to build adequate and functionally efficient buildings as proposed by the board of supervisors would not breach the contractual relation between the board of supervisors and the electors, nor would it violate the constitutional limitation imposed by law.

Respondent argues that had the electors known it would cost more than the amount of the bond issue to construct the facilities, they would not have voted in favor of the proposition, or at least the election would not have carried by a two-thirds majority. Respondent is assuming that even though the voters had known in 1954 the facts of which the board of supervisors is acutely aware in 1957, they nonetheless would have refused to vote for the $8,400,000 bond issue. No one knows how the voters would have reacted under such circumstances. Whether the election would have carried in the light of the facts which could be known only by events which

developed subsequent to the election is a question upon which the courts will not speculate. Such conjecture may not be made the basis for implying a condition which was not expressed in the contract.

Let a writ of mandate issue as prayed for.

Barnard, P. J., and Griffin, J., concurred.