No. 12375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JAMES P. MURPHY,

Plaintiff and Appellant,

-vs-

M. E. McCLINTOCK et al.,

Defendants and Respondents.

---

ORIGINAL PROCEEDING:

For Appellant:

Arnold Huppert, Jr. argued, Livingston, Montana.

For Respondents:

Harold F. Hanser, County Attorney, Billings, Montana.
Arnold A. Berger, Special Deputy County Attorney,
argued, Billings, Montana.
C. W. Jones, Deputy County Attorney, argued, Billings,
Montana.

---

Submitted: October 26, 1972

Decided: NOV 1 1972

Filed: NOV 1 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a summary judgment in favor of defendants in an action seeking an injunction to prevent the construction of a multi-use building in Yellowstone County. The Honorable Charles Luedke presided. By the pleadings and the judgment, the injunction was denied and a declaratory judgment, in effect, rendered.

Plaintiff is a resident taxpayer of Yellowstone County. Defendants are the members of the Board of County Commissioners of Yellowstone County.

On November 2, 1971, the electorate of Yellowstone County approved a bond issue for $3,000,000 to provide for a multi-use building at Midland Empire Fairgrounds. The vote was 15,777 for and 9,838 against the proposition. The ballot provided for bonds "for the purpose of constructing and equipping a Multi-Use Building at the Midland Empire Fairgrounds, Yellowstone County, Montana, with a seating capacity of at least 10,000 and an arena area of approximately 250 feet by 400 feet."

The Board of County Commissioners then appointed an Advisory Commission and an Executive Board of the Advisory Commission to study plans, view other structures, and make recommendations to the Board. The Advisory Commission made its study and its recommendation to the Board of County Commissioners. On September 8, 1972, the Commissioners unanimously adopted a resolution which stated:

> "Ample study of the intent, the needs, the economics
> and the projected goals of the Multi-Use Building
> referendum having been made, we hereby direct the
> Advisory Commission previously appointed to supervise
> this project in accordance with the guidelines set
> forth in the referendum approved by the electorate
> November 2, 1971, and to proceed with the design of
> said building in the modified square configuration
> containing approximately 100,000 square feet of plane
> surface area within the building walls; and, designed
> to best fulfill the most uses for the most people
> of the County as heretofore and hereafter set forth
> by the said Advisory Commission."

The bonds were sold, but a controversy developed over whether the "modified square configuration", approximately 350 feet by 350 feet, sufficiently conformed as a legal matter to the referendum requirements approved by the people. The Advisory Commission had concluded that if the building could be built at all within the funds available the shape was immaterial, as long as the building contained approximately 100,000 square feet.

In a practical lay sense, the controversy develops because the square configuration will not contain a rectangular football field. However, it goes without further development that Yellowstone County at its fairgrounds is not involved in football or any other sports activity as its primary function.

To develop further what the actual controversy is, the plaintiff maintains that in Roman times the "arena" was the place of gladiator combat, separated from the crowds. The structure was an amphitheater. Defendants maintain that the term "arena" as used on the ballot would encompass the plane surface area in the entire structure.

The provisions of the ballot are:

1. Construction of a multi-use building;

2. Construction cost of $3,000,000;

3. Issuance of bonds not to exceed twenty years;

4. Equipping said building;

5. Locating the same at the Midland Empire Fairgrounds;

6. A seating capacity of at least 10,000 persons;

7. An arena area of approximately 250 feet by 400 feet.

There can be no question about the first six of the seven provisions enumerated. Number 7, an arena area of approximately 250 feet by 400 feet, is the only problem.

Webster's Seventh New Collegiate Dictionary defines "area" as:

"1: A level piece of ground;

"2: A surface included within a set of lines; specif: the number of unit squares equal in measure to the surface;

"3: * * *

- 3 -

"4: A particular extent of space or surface or one serving a special function;

"5: The scope of a concept, operation, or activity."

It defines the word "arena" as:

"1: An area in a Roman amphitheater for gladiatorial combats;

"2a: An enclosed area used for public entertainment;

" b: A building containing an arena."

Some cases have expanded upon these dictionary definitions. J.B. Blanton Company v. Lowe, Ky.(1967), 415 S.W.2d 376,377, provides a comprehensive definition of the term "area" in this language:

"The word 'area' has a somewhat elastic meaning. Originally it meant a broad piece of level ground, but in modern use it can mean any plane surface, the inclosed space on which a building stands, the sunken space or court giving ingress and affording light to the basement of a building; a particular extent of surface; an inclosed yard or opening in a house; an open space adjoining a house; any particular extent of surface; region; tract. In geometry, the superficial contents of any figure, as the area of a square or triangle; the surface included within any given lines." (Emphasis added).

This case, out of cases researched, was selected for its particular definition because it includes definitions taken from several other cases and is the most recent case found which defines the term.

The term "arena" has not been frequently defined. However, the court in Steinberg v. Forest Hills Golf Range, 303 N.Y. 577 (1952), 105 N.E.2d 93,95, undertook to do so, and cited the Roman concept of the term in this language:

"The central part of an amphitheater, in which the combats or spectacular displays take place."

The court then used the disjunctive "or" for this definition:

"Any place of public contest or exertion * * *."

It then went on to explain its meaning for the purposes of the case involved:

"* * * the term necessarily implies an effort before spectators, and, where sports events are involved, the element of a public contest between competitors."

- 4 -

We find, as did the district court, that the term "arena area" as used on the ballot means:  the enclosed space upon which the building will stand.

Also involved here is the term "approximately 250 feet by 400 feet", as used on the ballot.

"Approximate" has been defined as "close to or near"; Potter v. Anderson 85 S.D. 142, 178 N.W.2d 743,746.  "Approximately" has been defined as "near the amount, near to, about; a little more or less"; Eastern Service Management Company v. United States, D.C.S.C., 243 F.Supp. 302,305.  "Approximately" has also been defined as "'nearly', 'about', or 'close to'"; Garre v. Geryk, 145 Conn. 669, 145 A.2d 829,831.

The language of the ballot "approximately 250 feet by 400 feet" is directory upon the county commissioners, not mandatory, and it is within the discretion of the Board of County Commissioners to order the construction of the building recommended by the Executive Board of the Advisory Commission.  That building contains approximately 100,000 square feet of enclosed plane surface area.

The following citations of authority, in our opinion, support this analysis.

The applicable statute, section 16-2306, R.C.M. 1947, provides in pertinent part:

> "Said separate ballots shall be white in color and
> of convenient size, being only large enough to contain
> the printing herein required to be done and placed
> thereon, and shall have printed thereon, in fair-sized,
> legible type and black ink, in one line or more, as
> required, the words 'For' said bonding proposition
> (stating it and the terms thereof explicitly and at
> length), and thereunder the words 'Against' said bonding
> proposition (stating it and the terms thereof explicitly
> and at length in like manner, as above) * * *".

In Reid v. Lincoln County, 46 Mont. 31,44,57,59,60, 125 P. 429, the ballot in question was phrased:

> "For the issuance against the general credit of
> Lincoln County of coupon bonds in the amount of
> one hundred and twenty-five thousand dollars, the
> purpose of said issue being to provide funds for a

system of public highways, bridges, and free
ferries in said county, said bond being payable
in twenty years and redeemable in fifteen years,
and bearing interest at the rate of five per cent
per annum payable semiannually."

The ballot also contained the same statement beginning with
the word "Against". Challenge was made to the ballot on the
ground that it did not sufficiently state the proposition to
be voted on. This Court stated:

"Section 2938, [section 16-2306,R.C.M. 1947], Revised
Codes, relates to forms of ballots to be used at elec-
tions wherein any question or proposition of, or re-
lating to, bonds is submitted to the people. It pro-
vides that the ballot shall state the bonding proposition
and the terms thereof explicitly and at length. We think
the form of ballot was sufficiently comprehensive and
explicit. It was not necessary to state therein the
course, termini, or exact location of the proposed high-
way, or the number or location of the proposed bridges
and ferries. The fundamental and initial question to
be determined in all cases is whether the people are
willing to authorize the commissioners to spend a defi-
nite amount of money for a certain public improvement.
* * *

"The opportunity is perhaps as propitious as any which
may occur for a declaration by this court that our
constitutional and statutory laws were designed to
clothe the boards of county commissioners of the state
with large discretionary powers in dealing with pro-
jects like the one we have under consideration. Certain
well-defined constitutional restrictions must at all
times be recognized and observed; but, aside from these,
the policy of the law is that the mere details of con-
templated public improvements shall be left to their
discretion. Where explicit statutory directions are
given, they must, of course, be complied with; but all
that is necessary in the initiation of a plan like the
instant one is, in general, that the people shall be
given an opportunity to intelligently exercise their
judgment. If county boards and similar administrative
bodies are to be continually harassed and hampered by
the nice technicalities of the law, oftentimes lacking
in substance and devoid of real merit, the settlement
and development of this vast northwestern empire will
be greatly impeded and retarded. As we read the statutes,
the policy of the law-making bodies has been, rather, to
make proceedings like the one in question as expeditious,
simple, and inexpensive as possible, to accomplish the
desired result, always bearing in mind, as heretofore
suggested, that the consent of the people must be founded
in an intelligent understanding on their part of the
general purpose for which the money is to be expended.
In preparing the ballot it was only necessary to substan-
tially follow the directions of the statute. (Tinkel v.
Griffin, 26 Mont. 426, 68 Pac. 859.)"

Also in Reid it was contended that the order and notice of
election were insufficient because they referred only to high-
ways and bridges but not to free ferries. On this point, the
Court stated:

- 6 -

"Section 2935 [section 16-2303, R.C.M. 1947], Revised Codes, merely provides that the notice of election shall clearly state the object of the loan. This means a general object of the loan. It is not necessary to specify all of the details. So long as a reasonably comprehensive notice is given, the courts have no power to declare it insufficient."

In Morse v. Granite County, 44 Mont. 78, 87, 93, 119 P. 286, the ballot stated that the bonds were "for the purpose of the construction of a county courthouse for the said county and the purchase of additional ground therefor, and the furnishing and equipment thereof." Concerning the sufficiency of the ballot, this Court stated:

"While the form of bond adopted incorporated the proposition as printed upon the ballot, it was not incumbent upon the board to have it so. The amount and purpose of the loan, as stated in the ballot, was all that was required to be stated."

In County of San Diego v. Perrigo, 155 Cal.App.2d 644, 318 P.2d 542,545,546, a case similar to the instant case, the ballot provided:

"San Diego County Bond Proposition. Shall the County of San Diego incur a bonded indebtedness in the principal sum of $8,400,000 for the purpose of the construction, furnishing and equipping of buildings (including clearing of the site for the proposed buildings) to constitute a county courthouse and county jail, said buildings to provide quarters for the Superior and Municipal Courts, the county jail, and county departments and officials, and to be located on the site of the present courthouse and county jail and on land adjacent thereto?"

The bond issue was approved by more than two-thirds of the voters of San Diego County in 1954. During the delay necessary for the usual architectural and engineering work, the need for additional facilities arose. In 1957, prior to construction of the building, the board of supervisors of San Diego County adopted a resolution to redesign the courthouse and jail buildings to provide for the additional needs of the superior and municipal courts, including one additional traffic court, one additional arraignment court, a separate juvenile court, and quarters for the grand jury. The resolution stated that the additional facilities would cost $3,517,680 in addition to the bond issue and that the

- 7 -

additional funds could be supplied from the general fund of the county. The matter was challenged on the ground that the bond issue constituted a contract between the board and the electors, and therefore the board must build the type of buildings specified on the ballot proposition. The court agreed that a contractual relationship was created but disagreed that the contract was violated by stating:

> "The description of the buildings to be constructed is broad and general and contains no fixed plan or building program. The proposed changes specified in the resolution of the Board of Supervisors dated September 10, 1957, do not violate the terms of the contract in that respect. (Citing cases)"

Similarly, here, no specific building plan existed at the time of the election. From a practical standpoint, huge sums of money would be wasted if detailed plans for construction of the building were drawn in advance of the election and the voters disapproved the bond issue. It was argued in Perrigo that the voters may not have approved the bond issue in 1954, if they had known the facts of which the board of supervisors was aware in 1957. On this point, the court stated:

> "No one knows how the voters would have reacted under such circumstances. Whether the election would have carried in light of the facts which could be known only by events which develop subsequent to the election is a question upon which the courts will not speculate."

We note that the arena area contemplated on the ballot in the instant case is 100,000 square feet. The same square footage will exist in the proposed arena area. Considering that the Board of County Commissioners acted in good faith and necessarily without detailed construction plans at the time of the election, the proposed modification is minor. It is especially minor when viewed in light of the modifications approved in Perrigo. Here, the ballot is not so misleading as to make a vote meaningless and the contemplated change in the

dimensions of the arena area is not a substantial modification of the contract between the voters and the county commissioners. The proposed modification is, rather, a legitimate exercise of the discretionary powers of the county commissioners, as noted in <u>Reid</u>.

Accordingly, we affirm the judgment of the district court.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.