[L. A. No. 4300. In Bank.—October 4, 1915.]

## LEWIS E. BLISS, Petitioner, v. JOHN J. HAMILTON et al., Respondents.

COUNTY IRRIGATION DISTRICT—ACT OF JUNE 13, 1913—PETITION FOR FORMATION—NAME OF DISTRICT.—The requirement of the act of June 13, 1913 (Stats. 1913, p. 785), that the petition for the formation of a county irrigation district shall contain the name of the proposed district, is complied with in a case where the petition, when left with the clerk of the board of supervisors, stated that the name should be "Los Angeles County Irrigation District Number (    )," and the clerk, after the filing of the petition and before its presentation to the supervisors, inserted the numeral "three," making the name read "Los Angeles County Irrigation District Number Three," by which name the district was designated in all subsequent proceedings.

ID.—FIXING DATE OF HEARING—VACATING DATE FIRST FIXED AND FIXING DIFFERENT DATE—FILING UNDERTAKING FOR COSTS.—The board of supervisors, after by order fixing the time and place for the hearing of the petition and of any protests, of which a defective notice was given, had power to vacate the proceedings previously had and by subsequent order fix another time for hearing and protests; and an undertaking for costs, filed prior to the making of the latter order, will be deemed to have been filed "with the petition" in the sense of the statute.

ID.—TIME OF HEARING—NOTICE—MANDATORY AND DIRECTORY PROVISIONS OF STATUTE.—The requirements of section 3 of the statute that the time set for the hearing of the petition and protests shall not be less than twenty-one days from the making of the order for mum time for the hearing at "not more than thirty days after the date of presentation" of the petition, is directory only.

hearing, as well as the requirements as to the notice to be given, are substantive and mandatory, while the provision fixing the maxi-

ID.—TIME TO FILE PROTEST.—Under section 4 of the act, the right to file a protest is limited to a time "at or before the time set for the hearing of the petition," and the board of supervisors properly disregarded any protests filed subsequent to the hour so set.

ID.—SUFFICIENCY OF DESCRIPTION OF PROPOSED IMPROVEMENT.—The description of the proposed improvement contained in the petition for the organization of the district in question, considered in connection with the accompanying map, plans and specifications, sufficiently conforms to the requirements of the statute.

ID.—CONSTITUTIONAL LAW—LOCAL AND SPECIAL LAWS AFFECTING ELECTIONS.—Such act is not violative of subdivision 11 of section 25 of article IV of the constitution, prohibiting the enactment of local or special laws in regard to the conducting of elections or the designation of places of voting. The elections referred to in such constitutional provision are the ordinary elections held to choose civil officers of the state or of its local subdivisions, and has no application to such elections as those provided for by the County Irrigation District Act.

ID.—BONDS MAY BE AUTHORIZED BY MAJORITY VOTE.—The act is not violative of section 18 of article XI of the constitution, in that it provides for the issuance of bonds of the district by a majority vote rather than by a two-thirds vote. The prohibition against the incurring of an indebtedness except by a two-thirds vote, contained in that provision of the constitution, is limited to the corporations named therein,—namely, county, city, town, township, board of education, or school district, and cannot be extended to any other public corporations.

ID.—BONDS NOT COUNTY INDEBTEDNESS.—The bonds provided for by the act are in no sense an indebtedness of the county in which the irrigation district is situated, or of any of the subdivisions or districts in the county which are specified in the constitutional provision.

ID.—TAXATION IRRESPECTIVE OF BENEFITS CONFERRED.—The act is not unconstitutional in that it imposes a tax on all property within the districts, irrespective of the benefits conferred by the improvement.

APPLICATION for a Writ of Mandate directed to the Board of Supervisors of Los Angeles County.

The facts are stated in the opinion of the court.

W. B. Mathews, and W. H. Wadsworth, for Petitioner.

A. J. Hill, County Counsel, Edward T. Bishop, Deputy County Counsel, and Charles E. Haas, Deputy County Counsel, for Respondents.

ANGELLOTTI, C. J.—This is an application for a writ of mandate requiring and commanding the respondents, who constitute the board of supervisors of Los Angeles County, to take certain proceedings relative to the issuance of bonds of the Los Angeles County Irrigation District No. 3, in accordance with the provisions of an act entitled "An act to provide for the formation, management and dissolution of county irrigation districts; for supplying the inhabitants thereof with water; for levying and collecting taxes on property in such districts; and for the issuance of county irrigation district bonds and the payment thereof," approved June 13, 1913. (Stats. 1913, p. 785.) An alternative writ of mandate was issued, and the matter has been submitted for decision upon the pleadings and upon an agreed statement of facts.

The act referred to substantially provides for the formation of districts for the purpose of obtaining for a district so formed a specific improvement for the purpose of supplying the inhabitants of the district with water, the moneys necessary therefor to be obtained by the sale of bonds of such district, which, with accruing interest, are to be paid by means of taxes levied annually by the supervisors on the taxable property of such district. Any portion of a county containing unincorporated territory or containing the whole or any portion of one or more incorporated cities and contiguous unincorporated territory, and not included in a county irrigation district, may be formed into such a district. For the formation of such a district it is essential that a petition therefor be presented to the board of supervisors of the county in which it is located, signed by not less than fifty freeholders resident within the proposed district. The law requires that this petition shall contain the name and boundaries of the proposed district; a general description of the improvement desired, which may embrace the acquisition or construction of waterworks, structures, and appliances, and the acquisition in any way of lands, rights of way, water, water rights and water service necessary or convenient for such purposes; an estimate of the cost of the proposed improvement and of the incidental expenses; and a request that an election be called "for the purpose of submitting to the qualified voters thereof the proposition of forming such district and incurring indebtedness by the issuance of bonds of such district to pay the cost and expenses of the proposed improvement." The peti-

tion must be accompanied by a map showing the exterior boundaries of the proposed district and plans and specifications of the proposed improvement. "There shall also be filed with such petition a good and sufficient undertaking, to be approved by the board of supervisors, in double the amount of the probable cost of forming such district, conditioned that the sureties shall pay such cost, in case the formation of such district shall not be effected." The petition "must be presented at a regular meeting" of the board of supervisors, "and the board shall thereupon fix a time for hearing the same, and protests of interested parties, not less than twenty-one nor more than thirty days after the date of presentation thereof." The clerk must then give notice of the filing and hearing of such petition both by posting and by publication, the posted notices to be in three of the most public places in the district. Each notice must be headed "Notice of the Formation of —— County Irrigation District No. ——" (stating name of county and number of district) in letters not less than one inch in length and must state in effect the date of the filing of the petition, the date and hour for hearing of the petition and protests, briefly describe the proposed improvements, specify the exterior boundaries of the district, and refer to the petition, map, and plans and specifications for further particulars. The published notice must be one similar in substance and it must be published at least once a week for two consecutive weeks in a newspaper of general circulation, printed and published in the county and designated by the board of supervisors. The posting must be at least ten days before the date set for hearing of the petition. Any person interested may file a written protest setting forth his objection "with the clerk of said board at or before the time set for the hearing of said petition." The clerk must indorse on each protest the date of its reception by him. The board shall hear the petition and protests at the time appointed, or at any time to which the hearing may be adjourned, and pass upon the same, and its decision shall be final and conclusive. The act provides that the objections may go either to the formation of the district, or its extent, or to the proposed improvement, or to the inclusion of the property of the objector in said district, and the board is authorized in determining protests to make changes in the boundaries of the proposed district. "At the expiration of the time within which pro-

tests may be filed, if none be filed, or if protests be filed and, after hearing be denied, . . . then said board shall be deemed to have acquired jurisdiction to further proceed in accordance with the provisions of the act." Such jurisdiction having been acquired the board must by ordinance or resolution provide for a special election in the proposed district, and the submission to the qualified electors thereof "of the proposition of forming such district and incurring a debt by the issuance of bonds of such district for the purposes set forth in said petition." "For the purposes of said election, the board of supervisors shall, in said ordinance or resolution, establish one or more precincts . . . designate a polling place, and appoint one inspector, one judge and one clerk for each such precinct. In all particulars not recited in such ordinance or resolution, such election shall be held as provided by law for holding general elections in such county. . . . If at such election a majority of the votes cast are in favor of the formation of such district and the incurring of such bonded indebtedness, then the board of supervisors shall enter an order to that effect upon its minutes, declaring said district formed, and said board shall thereupon be authorized and empowered to issue the bonds of said district for the amount provided for in such proceedings, payable out of funds of such district to be provided as in this act prescribed." The board of supervisors shall, subject to the provisions of the act, prescribe the form of bonds and of the interest coupons. The bonds are to be signed by the chairman of the board of supervisors. The board of supervisors may issue and sell the bonds of the district, authorized as above provided, at not less than par value, the proceeds of the sale to be placed in the county treasury to the credit of the district fund and applied exclusively to the purposes and objects mentioned in the ordinance or resolution ordering the holding of the bond election. Each year the board of supervisors must levy a tax upon the taxable property in such district sufficient to pay the interest on the bonds for that year and such portion of the principal thereof as is to become due. This tax must be levied and collected in the same manner as the general tax levy for county purposes, and when collected shall be paid into the county treasury and used only for the payment of the principal and interest on said bonds. The construction of the improvement and the maintenance, opera-

tion, etc., of the district are to be in the hands of the board of supervisors, who, for the purpose of maintenance, operation, etc., may levy a special tax annually on the taxable property of such district. The title of all property acquired for a county irrigation district is vested in the county, unless "all of the territory in such county irrigation district shall be annexed to or otherwise included within any municipal corporation owning works for supplying the inhabitants thereof with water," in which case the district shall be deemed dissolved and the property shall become the property of such municipal corporation.

Under this act proceedings were had looking to the organization of the district and incurring a debt by the issuance of bonds in the sum of two million six hundred and six thousand dollars and an election was had in said district at which election a majority of the votes cast were in favor of the formation of said district and the incurring of said indebtedness, and on November 16, 1914, the board of supervisors duly made and gave its order to that effect declaring said county irrigation district to be formed and said indebtedness authorized. At this point the board of supervisors declined to proceed further under said act, and in particular has declined to make any order prescribing the form of the bonds and interest coupons as required by section 7 of the act, or to take any of the necessary steps essential to the issuance of said bonds.

It is claimed by the respondents that by reason of certain defects in the procedure, the board of supervisors never acquired jurisdiction to submit the question of organization and indebtedness to the electors of the district.

A. It is urged first, that the petition required to be presented to the board of supervisors at a regular meeting (secs. 2 and 3, act), did not contain the name of the proposed county irrigation district. Section 2 of the act provides that the petition for the formation of the district shall contain, among other things, "the name and boundaries of the proposed county irrigation district," etc. The act impliedly requires that such a district in Los Angeles County shall be named "Los Angeles County Irrigation District Number (   )," with the number designated by the insertion of a numeral. (Sec. 3.) The idea apparently was that the various districts in any county should be numbered in sequence,

commencing with the number one. When the petition in this case was left with the clerk of the board of supervisors on September 8, 1914, it did not contain the numeral 3 in the designation of the name of the district, the statement as to name being as follows: "First, that the name of said county irrigation district to be benefited by the proposed improvement shall be 'Los Angeles County Irrigation District Number (    ).' " The clerk filed this petition, and after such filing inserted in lead pencil the numeral 3, making the name read "Los Angeles County Irrigation District Number 3," by which name the district was designated in all subsequent proceedings. Subsequent to the insertion of such number and on the same day, September 8, 1914, the petition was "presented" to the board. When so presented to the board it thus appears that it did contain the name in full of the proposed district. Under all the circumstances we think that the claim is so exceedingly technical as hardly to merit discussion. The statute nowhere appears to require a *filing* of the petition by the clerk, prior to the presentation of the petition to the board. When presented to the board in this case the petition was in proper form in so far as this requirement was concerned. Under the circumstances we must assume that the clerk was authorized by those leaving the petition with him for presentation to complete the statement as to name by the insertion of a proper number. Both literally and substantially the petition was in this respect, when presented to the board, in full compliance with the law.

B. No bond for costs was filed until September 16, 1914, the eighth day after the presentation of the petition. As we have seen the statute provides that such undertaking shall be filed "with said petition." On September 8, 1914, the board by order fixed October 5, 1914, as the time, and the chambers of the board as the place, for the hearing of the petition and of any protests. Of this proposed hearing the clerk had proceeded to give notice by posting and publication, but the notices given were defective in that the exterior boundaries of the district were not correctly set forth therein. On September 16, 1914, a proper undertaking for costs was filed. On September 23, 1914, the board, by order duly made, reset the hearing of the petition, and fixed October 13, 1914, at the hour of 10 o'clock A. M. at the meeting place of the board as the time and place for hearing, and directed proper notice to

be given by the clerk. Proper notice was so given by the clerk, and the hearing was had on said October 13, 1914.

We can see no force in the claim of respondents that the board did not have the power, ascertaining that the notice already given by the clerk was absolutely ineffectual as a notice by reason of its failure to correctly specify the exterior boundaries of the district, to practically vacate the proceedings had theretofore and fix another time for hearing and protests. A consideration of the provisions of section 3 of the act indicates that the important and substantial thing is that the time set for hearing petition and protests shall be not less than twenty-one days from the making of the order for hearing. This is to insure sufficient opportunity to persons interested to present their objections. In so far as this requirement is concerned as well as the requirements as to the notice to be given, the provisions of section 3 are unquestionably substantial and mandatory, and must be complied with. It is true the section in terms provides that the board shall fix a time for hearing the petition and protests "not less than twenty-one nor more than thirty days after the date of presentation thereof," but in so far as the provision fixes the maximum time it was for the purpose of insuring a speedy hearing to the petitioners, and we regard it as directory only. (See *Wheeler* v. *Herbert,* 152 Cal. 241, [92 Pac. 353].) It would not be in accordance with reason to hold that it was contemplated by the framers of the act that the proceedings should absolutely die because of the fact that the board had neglected to make an order for the hearing of the petition at such time as to make it possible to have the hearing within thirty days of the date of the presentation of the petition. At least twenty-one days must elapse between the making of the order for the hearing and the time set for such hearing. In the case at bar the board very properly regarded everything that had gone before as ineffectual for any purpose by reason of the mistake in the notice given by the clerk and the impossibility of the giving of a sufficient notice prior to the time originally fixed for the hearing,—namely, October 5, 1914, and therefore, substantially treating the petition as presented to them for further action on September 22, 1914, duly made an order fixing October 13, 1914, at 10 o'clock A. M. for the hearing, the time so fixed being not less than twenty-one nor more than thirty days from said September

22, 1914. The hearing of the petition and protests, by reason of the mistake in the notice, could not have been legally had on the date first noticed, October 5, 1914, and it was absolutely necessary that a new date should be set and new notice given before any hearing could legally be had. At the time the order of September 22, 1914, was made, the undertaking for costs had been filed. We think it clear that even if we assume the filing of such an undertaking for costs to be jurisdictional, the undertaking here filed may be said to have been filed "with said petition" in the sense of the statute.

C. As we have seen the act makes provision for the filing of protests, and action thereon by the board. (Sec. 4.) The right to file a protest is, however, by the terms of the act limited to a time "at or before the time set for the hearing of said petition," and "at the expiration of the time within which protests may be filed, if none be filed" the board must proceed as though no protests had been filed. No protest of any kind was filed with the clerk of the board of supervisors at or before 10 o'clock A. M. of October 13, 1914, the time set for the hearing. Certain protests were attempted to be filed therein, to wit, one at 10:30 A. M. of October 13, 1914, and another at 11:20 A. M. of October 13, 1914. The board of supervisors absolutely disregarded said protests and each of them, having never either sustained or overruled the same, and in so doing it must be held that they were fully authorized by the terms of the act.

D. We are unable to understand the theory of respondents in their claim that the petition for the organization of the district did not contain a sufficient description of the proposed improvement. The act requires that the petition shall contain a general description of the improvement desired and that the petition must be accompanied by a map showing the exterior boundaries of the proposed district, and "plans and specifications of the proposed improvement." The petition stated that the improvement desired "will consist of the construction and laying of certain conduits, and pipes, all of which, with the locations and dimensions thereof, are shown upon the map hereto attached as Exhibit A, and it is proposed and intended that said conduits and pipes shall be used for the purpose of taking water from certain main conduits and pipes constructed by the City of Los Angeles, and to distribute the said water to the lands contained in said proposed

Los Angeles County Irrigation District No. 3, and supplying the inhabitants thereof with water.'' It was further stated, ''that the estimated cost of the proposed improvement is $2,555,104 and of the incidental expenses in connection therewith $50,896.'' We have examined the map, plans, and specifications attached to the petition, and are of the opinion that they fully comply with the requirements of the act. It is shown thereby that the pipes are to be constructed of steel of certain dimensions and thickness, and sketches on the map sufficiently show, for all the purposes of the petition, the material of which the conduits were to be constructed. *Schwiesau* v. *Mahon*, 128 Cal. 114, [60 Pac. 683], refers to an entirely different subject matter, and is in no way in point.

What we have said sufficiently disposes, we think, of the technical objections to the procedure in this matter.

It is claimed that the act of June 13, 1913, is violative of certain provisions of our constitution prohibiting the passage by the legislature of local or special laws in regard to the conducting of elections or the designation of places of voting. (Subd. 11, sec. 25, art. IV.) A sufficient answer to all that is said in this behalf is to be found in *Wheeler* v. *Herbert*, 152 Cal. 231, [92 Pac. 353], where it is held that the elections referred to in this provision of the constitution are the ordinary elections held to choose civil officers of the state or of its local subdivisions, and that the provision of the constitution has no application to such elections as those provided for by the County Irrigation District Act. We might further say that we can see no good ground for regarding the provisions of the County Irrigation District Act relative to the elections to be held thereunder as being in any way special or local legislation within the purview of our constitutional provision, but what we have already said is sufficient answer to the objection of respondents.

It is further claimed that the act is violative of section 18, article XI, of our constitution, in that it provides for the issuance of bonds by a majority vote rather than by a two-thirds vote. Section 18 of article XI of the constitution provides: ''No county, city, town, township, board of education, or school districts, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at

an election to be held for that purpose,'' etc. This prohibition in the constitution has heretofore been strictly construed as limited to the corporations named therein,—namely, county, city, town, township, board of education, or school district, and it has been said that under familiar rules of construction, the provision cannot be extended to any other public corporation. This was held in *In re Madera Irrigation District,* 92 Cal. 296, 342, [27 Am. St. Rep. 107, 14 L. R. A. 755, 28 Pac. 272, 675], the case involving the question of the validity of certain bonds of an irrigation district organized under the act of March 7, 1887, that act providing as does this for the issuance of bonds if a majority of the votes cast were in favor thereof. The same objection was there made as is made here, and it was held that the provision of the constitution in question has no application to such a district. The bonds provided for by the County Irrigation District Act of June 13, 1913, are in no sense an indebtedness of the county in which the irrigation district is situated, or of any of the subdivisions or districts in said county which are specified in the constitutional provision. The legislature has simply provided for the creation of a taxing district for the purpose of paying the cost of the construction and maintenance of an improvement that will be for the special benefit of the inhabitants of that district. They have full power in that regard except in so far as that power is limited by provisions of our state and federal constitutions. We think it is clear, especially in view of what is said in *In re Madera Irrigation District,* that section 18 of article XI of the constitution has no application in such case.

Finally it is urged that the act of June 13, 1913, is unconstitutional because, it is said, the tax is to be imposed on all property within the district, irrespective of the benefits conferred by the improvement. In view of the many decisions of this court as to the power of the legislature in such matters as these, especially the decision in *In re Madera Irrigation District,* 92 Cal. 296, 342, [27 Am. St. Rep. 107, 14 L. R. A. 755, 28 Pac. 272, 675], we see no force in this claim.

We see no reason to doubt the validity of the act of June 13, 1913, here involved, or the validity of any of the proceedings had thereunder in the matter of the Los Angeles County Irrigation District Number 3. It follows that it is the manifest duty of the board of supervisors of Los Angeles County to

proceed to issue the bonds of the district in the manner provided by the County Irrigation District Act.

Let a peremptory writ of mandate issue requiring the board of supervisors of Los Angeles County to take such action in regard to the issuance of said bonds as is required by the provisions of the act of June 13, 1913, relative to the formation, management, and dissolution of county irrigation districts, etc.

Shaw, J., Melvin, J., Sloss, J., Lorigan, J., and Lawlor, J., concurred.

Rehearing denied.