[S. F. No. 14431. In Bank.—August 29, 1932.]

EL DORADO IRRIGATION DISTRICT, Petitioner, v. R. W. BROWNE, as Treasurer, etc., Respondent; JOHN L. LUSE et al., Interveners.

Downey, Brand & Seymour and Thomas Mahl for Petitioner.

Ralph H. Lewis for Respondent.

Hatch & Mahl and Hadsell, Sweet & Ingalls for Interveners.

Hankins & Hankins, A. L. Cowell, Griffin & Boone and Charles L. Childers, as *Amici Curiae* on Behalf of Petitioner.

THE COURT.—This is a petition by El Dorado Irrigation District for a writ of mandate to compel respondent, its treasurer, to pay a warrant drawn upon the construction fund of the district. Upon the hearing in this matter an order of reference was made and findings of fact were prepared by the referee, Hon. Peter J. Shields, Judge of the superior court. From these findings, the essential undisputed facts appear as follows: Pursuant to section 30 of the California Irrigation Act (2 Deering's Gen. Laws, 1931, p. 1948, Act 3854), the district employed S. J. Norris, an engineer, to prepare plans for irrigation works. Upon the rendition of his report, the board of directors estimated that the sum of $1,300,000 would be necessary to carry out the project. The report and estimate were submitted to the bond certification commission (now the California districts securities commission), composed of the attorney-general, state engineer and superintendent of banks, as required by section 30a of the Irrigation Act. The commission gave its approval, and on January 20, 1927, the board called a special election at which the bonds were voted. Thereafter $600,000 worth of bonds were sold, the proceeds placed in the construction fund, and the money expended.

On December 20, 1928, a supplemental engineering report was submitted by Norris, approved by the directors and by the bond certification commission. This report made certain changes in the original plan of construction embodied in the first report. Thereafter, an additional issue of $350,000 worth of bonds was sold, and construction was continued under the modified plan. Various expenditures were made and obligations were incurred.

On November 25, 1930, an action was commenced by Matthew Murray, a taxpayer of the district, on behalf of himself and other taxpayers, to enjoin further construction,

on the ground that the district had no power to change the plans after the bonds had been voted. This action was subsequently dismissed by the plaintiff and a new action was filed, in which a demurrer was sustained and dismissal entered after failure of the plaintiff to amend.

One of the contracts made by the district in carrying out the modified plan was with the Pelton Water Wheel Company. A balance of $403.80 being due under said contract, a claim was presented to and approved by the directors, and a warrant drawn, directing the respondent treasurer to pay the sum. Because of doubts as to the validity of the proceedings, he refused to do so. Because of similar doubts, the general contractor on March 13, 1931, refused to continue performance. There being no litigation then pending by which a speedy determination of the issue could be had, the district sought the remedy by application for mandate to this court. Matthew Murray and John L. Luse, as taxpayers, intervened and filed briefs in opposition to the petition.

The single question which is presented to us is whether the district had the power to use the funds derived from the sale of the bonds in accordance with a plan which differed substantially from that upon which the original estimate was based. It is conceded that changes in minor details are permissible, but as will hereinafter appear, the differences between the original and modified plan are substantial. It should be noted, however, that the record contains no suggestion of fraud, the changes having been made in good faith, in the belief that they were advantageous to the district.

It is contended by interveners that the modified plan is in effect an abandonment of the original project. This is not borne out by the facts. The first engineering report contemplated the purchase of a system of laterals, dam and reservoir of El Dorado Water Corporation; enlargement of the laterals and perfection of a water supply for the city of Placerville; storage of water from the Consumnes River by the construction of a reservoir at Sly Park in Hazel Valley; and construction of an auxiliary dam to increase the stored water. The second report recommended the same purchase of the El Dorado Water Corporation system, the lateral enlargement and the municipal water supply, but

postponed the construction of the reservoir at Sly Park and instead provided for the enlargement of a storage reservoir at Weber Creek, included in the system purchased from the water corporation. The changes are considerable, but there is no basis for the conclusion that the Sly Park reservoir has been abandoned and an entirely new development entered upon. The Sly Park and the Weber Creek storage are provided for in both plans, the differences being in the priority of development and the proportion of water to be secured from each.

In considering the authority of the district and its directors, it should be remembered that the legislative power over such districts is plenary, and that they might be formed and permitted to issue bonds without any vote of the electorate at all. There is no constitutional right of residents of such a district to vote on bond issues. (*In re Bonds of San Joaquin Irr. Dist.*, 161 Cal. 345 [119 Pac. 198]; *Los Angeles Flood Control Dist.* v. *Hamilton*, 177 Cal. 119 [169 Pac. 1028].) This right is, however, given to the electors by the California Irrigation Act.

A brief examination of the statute and the cases will show that the board had power to make the changes. The most important decision is *Board of Directors of Modesto Irr. Dist.* v. *Tregea*, 88 Cal. 334 [26 Pac. 237], where bonds were issued under the Wright Act (the predecessor of the present Irrigation Act) to carry out a plan to bring water from the Stanislaus River to irrigate 108,000 acres of land, and after the bonds were voted, the plan was changed to provide for securing the water from the Tuolumne River for a lesser acreage. The court held that the change could properly be made. The conclusion of this case clearly governs us here, unless it has been limited by later decisions or legislation. In fact, however, it has never been overruled or nullified by statute. In *Cullen* v. *Glendora Water Co.*, 113 Cal. 503 [39 Pac. 769, 45 Pac. 822, 824, 1047], the court said of the Tregea case: " . . . we held that the authority to issue bonds is not so bound up with the preliminary plans as to sources of supply upon which the estimate is based that the proceeds of a valid issue of bonds cannot be used to carry out a modified plan if the change is deemed advantageous." Subsequent legislation tends to strengthen, rather than weaken, this view. At the time

these cases were decided, the statute did not specifically require that a plan be prepared prior to the bond election. The Cullen case nevertheless held that such a plan was necessary as the basis for an estimate of the amount of bonds to be voted. Subsequent to that time, in 1913, the statute was amended to make express provision for a preliminary plan, but neither at this nor any later period was any limitation placed upon the board in the matter of changes. On the contrary, the existence of such a power in the board was recognized by the 1917 amendment to section 30b of the act which requires the approval of the bond certification commission to any changes. The said amendment reads as follows: " . . . provided, further, that if any district shall issue bonds to carry out any plans approved by said irrigation district bond commission as herein provided it shall be unlawful for said district to make any material change in said plan thereafter without the consent of said commission." The futility of limiting the exercise of a nonexistent power indicates that the power really did exist; and the failure to abrogate the rule of the Tregea case is still more persuasive. We conclude that an irrigation district may, under the existing law, make substantial changes in the plan of a proposed project, after the election at which bonds are voted.

■ It is urged by interveners that the resolution of the board, the notice of the election and the proposition placed upon the ballot incorporated the plan of the first engineering report so as to make any subsequent change a violation of a contract with the electors, and emphasis is also placed upon the publicity given the original report, which was distributed among the voters of the district. It is clear that the publication and distribution of such an informal report cannot be deemed to limit the statutory powers of the board. The electors vote with presumed knowledge of those powers. (*Los Angeles Flood Control Dist.* v. *Wright*, 213 Cal. 335 [2 Pac. (2d) 168].) ■ As to the resolution, notice and ballot, inspection discloses that they were framed in general terms. The proposition on the ballot read as follows: "Shall bonds of El Dorado Irrigation District, in the amount of one million three hundred thousand ($1,300,-000.00) dollars be issued for the purpose of constructing and purchasing the necessary irrigation canals, pipes, pipe

274

lines, dams, reservoirs, weirs, and works, and acquiring the necessary property and rights therefor, and for the purpose of acquiring water, water rights, reservoirs, reservoir sites and other property necessary for the purpose of El Dorado Irrigation District and otherwise carrying out the provisions of an Act of the Legislature of the State of California, entitled 'An Act to provide for the organization and government of irrigation districts, and to provide for the acquisition and construction thereby of works for the irrigation of lands embraced within such districts, and also to provide for the distribution of water for irrigation purposes', and all acts amendatory thereof, under which Act El Dorado Irrigation District was organized.'' While the district may, by the form of the proposition, limit itself to a particular plan, no such limitation may be implied from a statement as broad and general as that involved herein. (See *County of Alameda* v. *Garrison,* 108 Cal. App. 122 [291 Pac. 464]; *O'Farrell* v. *County of Sonoma,* 189 Cal. 343 [208 Pac. 117]; *Williams* v. *City of Stockton,* 195 Cal. 743 [235 Pac. 986].)

No other points require discussion. The board had the power to proceed under the modified plan, and the obligations incurred thereunder were valid. Respondent's refusal to pay the warrant is therefore unjustified.

It is ordered that a peremptory writ of mandate issue, directing respondent to pay the sum stated in the above-mentioned warrant.