[Civ. No. 5824. Third Appellate District.—June 4, 1937.]

J. E. STRAIN, Appellant, v. EAST BAY MUNICIPAL UTILITY DISTRICT, Respondent.

James H. Boyer for Appellant.

T. P. Wittschen, L. W. Irving and Harold Raines for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against him pursuant to an order sustaining a demurrer to an amended complaint for injunctive relief, without leave to amend.

The amended complaint alleges that the plaintiff is a resident and taxpayer in the East Bay Municipal Utility District, which is a *quasi*-municipal corporation organized under the laws of California; that the Hawaiian Sugar Refining Corporation, Limited, is a private corporation owning a large sugar refining industry located at Crockett in Contra Costa County; that the defendant and the sugar refining company executed a written contract September 18, 1935, which is attached to the complaint and marked exhibit "A", by the terms of which the defendant agreed to construct a pipe line and equipment for the delivery and sale to the sugar refinery company of "not less than 2,500,000 gallons of water each twenty-four (24) hours during the term of this agreement", which is for a period of ten years, in consideration of which the sugar refinery company agrees to advance to the defendant the sum of $458,672 towards the cost of construction of the pipe-line system. The contract provides that the sugar refining company will pay monthly for water so delivered a net sum ascertained at the rate fixed by the board of directors of the Utility District from time to time, from which monthly payments the company may retain and apply on the defendant's said indebtedness of $458,672 the portion of the amounts so due, as follows:

"(a) From every monthly bill showing delivery to the Company of more than 40,000,000 gallons, the Company shall deduct and retain seventy (70) per cent of the entire amount thereof.

"(b) From every monthly bill showing delivery to the Company of less than 40,000,000 but more than 25,000,000 gallons, the Company shall deduct and retain fifty (50) per cent of the entire amount thereof.

"(c) No deductions shall be made from monthly bills showing delivery to the Company of less than 25,000,000 gallons.

"(d) . . . In no event shall such refunds be made during any year in an amount which shall leave a balance of gross revenue to the District from all service to the Company by means of said project of less than $35,000 for such year. . . ."

The contract further provides in part:

"11. The Company agrees to purchase, and the District agrees to deliver, the total fresh water requirements of the Company for use in its sugar refinery, estimated at 600,000,000 gallons per year. . . .

"12. The District agrees and guarantees that . . . the Company, under this agreement, shall have the first call upon all surplus waters of the District; that is to say, all waters not required for sale and use within the boundaries of the District. . . .

"13. It is further agreed that in the event the District shall be unable to deliver in accordance with paragraph 11 hereof for a period sufficient to reimburse the Company for the money advanced by it under paragraph 2 hereof, *the District shall forthwith repay to the Company any balance then owing, which shall be the District's full liability hereunder because of such failure.*

"20. All refunds to the Company for moneys advanced as provided in Section 10 hereof, shall, except as provided in Section 13 hereof, be out of charges for water delivered within ten (10) years from the time of first delivery and not thereafter."

The amended complaint then alleges that prior to June 1, 1936, the defendant borrowed from the sugar refinery company said sum of $458,672 pursuant to the terms of the contract, and at its own expense constructed the pipe line mentioned at a cost in excess of that amount, which sum is wholly unpaid; that said indebtedness was incurred without the approval of two-thirds, or of any vote of the electors of said Utility District; that at the time said indebtedness was incurred the district issued, sold and then had outstanding bonds in the aggregate sum of $64,000,000, which, with accrued interest, exceeded, "and for more than the next succeeding ten years will continue to exceed the ordinary annual income and revenue of said Utility District from all sources, other than taxes, by more than One Million Dollars"; that at no time has there been money in the treasury of said district *from the sale of bonds* with which to meet the obliga-

tion, and that the defendant threatens to, and unless restrained will fulfill the terms of the contract "and make the payments of cash from the funds and assets of said Utility District and make the delivery of water now owned by said Utility District, as agreed to be paid and delivered by it under the terms and provisions of said contract".

To this second amended complaint the defendant demurred for uncertainty and upon the ground that it fails to state facts sufficient to constitute a cause of action authorizing the issuance of an injunction. The demurrer was sustained without leave to amend the pleading, and a judgment of dismissal was thereupon rendered pursuant thereto. From that judgment the plaintiff has appealed.

The appellant concedes that the district has a statutory right to contract to supply water to customers beyond the limits of the district and that there is no constitutional inhibition against incurring an indebtedness of the district to be repaid from the revenue of a succeeding year. Since the Utility District does not belong to the classes which are specifically inhibited by article XI, section 18, of the Constitution from incurring indebtedness to be paid from the revenues of a succeeding year, without the assent of two-thirds of the electors thereof, there is no constitutional provision which renders the contract invalid on that account. (*Bliss* v. *Hamilton,* 171 Cal. 123 [152 Pac. 303].) The bonds of the defendant district have been specifically validated. (*In re Validation of East Bay Municipal Utility District Bonds,* 196 Cal. 725 [239 Pac. 38].) But the appellant does contend that the contract with the sugar refining company to repay its loan of $458,672 from the proceeds derived from the sale of water to the company, without a two-thirds vote of approval by the electors of the district is in violation of the provisions of section 12, subdivision 8, of the Public Utility Act of California, as amended in 1935 (Stats. 1935, p. 410; Deering's Supp. to Laws of 1935, p. 1624, Act 6393), which provides:

"Any municipal utility district incorporated as herein provided shall have power:

.  .  .  .  .  .  .  .  .  .  .  .  .

"Eighth—To borrow money and incur indebtedness, and to issue bonds or other evidences of such indebtedness; also to refund or retire any indebtedness that may exist against

or be assumed by the district; provided, no indebtedness shall be incurred exceeding the ordinary annual income and revenue of the district without the approval of a two-thirds vote of the electors voting on the proposition to incur such indebtedness; provided, however, that a further vote of the electors is not required for any indebtedness heretofore or hereafter incurred within the purposes and not exceeding the available amount of any previously authorized bond issue and as to such indebtedness the proceeds of any of such bonds unexpended in the treasury of the district, or the par value of any of such bonds which are unsold shall be deemed a part of the ordinary annual income and revenue of such district; provided further, that any district operating a utility under rules and regulations requiring applicants for extensions to advance the expenses of such extensions and facilities for serving additional territory may enter into agreement to refund to such applicants in a subsequent year the whole or any part of such expenses so advanced and such refunds may be paid out of the revenues of such subsequent years.''

We are of the opinion the facts of the present case as related in the amended complaint bring this case directly within the last proviso of section 12, subdivision 8, of the Public Utility Act above quoted, and that, under the circumstances alleged in the complaint, the statute does not require the approval of such indebtedness by a two-thirds vote of the electors. While it is true that an ordinary indebtedness of a utility district may not be incurred to be paid from the resources derived in future years, without the approval of the electors, the statute clearly makes an exception to that rule where a consumer of water advances funds to the district for the purpose of extending the system and equipment to outside territory. A proviso to an act of the legislature is an exception thereto which is deemed to qualify or modify the enacting provision of the statute to that extent. (6 Words and Phrases, 1st ser., p. 5755.) The statute which is here involved, after stating the general rule with respect to incurring indebtedness of the district to be paid from the revenues of future years, says:

''Provided further, that any district operating a utility under rules and regulations requiring applicants for extensions to advance the expenses of such extensions and facilities for serving additional territory may enter into agreement to

refund to such applicants in a subsequent year the whole or any part of such expenses so advanced *and such refunds may be paid out of the revenues of such subsequent years.*"

That is precisely the purpose and method employed in the execution of the challenged contract which is involved in this case. The contract in question comes directly within the language of the proviso last quoted. The contract is therefore not illegal or void.

It may not be said the Utility District was not operating under such rules and regulations. The pleading indicates that it was so operating. It contains no allegations to the contrary.

■ Moreover, the complaint does not seek merely to prevent the refunding of the obligation from the revenues of a future year, but it attempts to enjoin the defendant from supplying water to the sugar refining company under the terms of the contract or at all. Nor is it specifically alleged that the district lacks available funds other than those which may be derived from the revenues of future years with which to meet the obligation. For the purpose of injunctive relief, the complaint is defective in that regard. It is said in *McBean* v. *City of Fresno,* 112 Cal. 159 [44 Pac. 358, 53 Am. St. Rep. 191, 31 L. R. A. 794], in that regard:

"In the case of contracts extending over a period longer than one year, it may be readily seen that the municipality is abundantly protected, and that it is the contractor therewith who subjects himself to peril and risk of loss. If there are not revenues for any given year sufficient and available for the payment of his claims for that year, those claims become waste paper, and are not carried over as a charge against the income and revenue of a succeeding year."

All that the pleading alleges in that regard is that the district does not possess in its treasury fund *"the proceeds of the sale of any bonds* previously authorized" to be sold, and that the operating expenses and the annual payments of principal and interest on the bonds "exceed the ordinary annual income and revenue of said Utility District . . . by more than One Million Dollars".

■ Since this is an order sustaining a demurrer to a second amended complaint, and the plaintiff made no request to be permitted to amend the pleading he waived the right to assert that the court abused its discretion in sustaining the

pleading without leave to amend it. (*See* v. *Joughin,* 18 Cal. App. (2d) 414 [64 Pac. (2d) 149].)

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1937.