[Civ. No. 9802.   Fourth Dist., Div. Two.   Oct. 22, 1969.]

EASTERN MUNICIPAL WATER DISTRICT, Petitioner, v. SHIRLEY J. SCOTT, Respondent.

## COUNSEL

O'Melveny & Myers, James Warren Beebe, Urban J. Schreiner, Fredric P. Sutherland and William G. Adams for Petitioner.

Redwine & Sherrill and Maurice C. Sherrill for Respondent.

## OPINION

**TAMURA, J.**—This is an original mandamus proceeding brought by the Eastern Municipal Water District (District) to test the validity of section 71960 of the Water Code authorizing municipal water districts organized and existing pursuant to the Municipal Water District Law of 1911 (division 20, Water Code) to issue general obligation bonds without a vote of the electorate under the limited circumstances and conditions prescribed by the section.

Section 71960 was enacted as an urgency measure in 1968. It was designed to alleviate the financial problem faced by many municipal water districts because of current high interest rates and declining municipal bond market and the consequent inability of the districts to sell previously authorized bonds at the statutory maximum 5 percent interest rate which was in effect at the time the bonds were voted. (Stats. 1968, ch. 1269.) The section provides: "The board may, without a vote of the electors, provide

for the issuance of, and issue, general obligation bonds of the district or for an improvement district thereof if:

"(a) The principal amount of such bonds do not exceed the then unissued balance of the principal amount of bonds authorized at an election held in the district, or in such improvement district, prior to May 9, 1967;

"(b) The bonds are issued for the same purpose as that for which said unissued bonds were authorized; and

"(c) The bonds are issued in accordance with the provisions of this article, except for the requirement of a bond election.

"Bonds issued pursuant to this section may bear interest at a rate or rates not to exceed 6½ percent per year, payable semiannually, except that interest for the first year may be payable at the end of that year. When bonds are issued pursuant to this section, unissued bonds as referred to in (a) and (b) above in a principal amount at least equal to the principal amount of bonds issued pursuant to this section, shall be canceled by order of the board and shall not be issued."

Petitioner-district is seeking to avail itself of the benefit of section 71960. The following facts are uncontroverted:

In 1956 the District initiated proceedings for the acquisition and construction of certain water distribution facilities beneficial to a portion of the District, the formation of an improvement district comprising the territory to be benefitted, and the issuance of bonds to finance the proposed improvement. In accordance with the procedure prescribed by statute, the board of directors adopted a resolution of intention to form the improvement district and to incur a bonded indebtedness of $100,000 for the purpose of acquiring and constructing the improvements. Following a hearing, it fixed the boundaries of the improvement district and ordered a special election to be held in the improvement district for the purpose of submitting to the voters the proposition of incurring a bonded indebtedness of $100,000. The order calling the election specified that the maximum interest rate on the bonds shall not exceed 5 percent per annum, that being the maximum then permitted under the Municipal Water District Law of 1911.[1] The election carried by more than the required two-thirds vote.

In January 1957 the board of directors issued and sold bonds in the principal amount of $75,000 leaving $25,000 authorized but unissued. Because of the recent decline in the municipal bond market, the unissued bonds cannot be sold for their par value at an interest rate within the

---

[1]Sections 71953 and 71861 of the Water Code were amended in 1967 to increase the permissible maximum interest rate from 5 percent to 6½ percent per annum. (Stats. 1967, ch. 105.)

maximum 5 percent permitted by law at the time the bonds were voted. The final phase of the planned improvements for the improvement district has never been completed.

On April 16, 1969, pursuant to the provisions of section 71960, the board of directors adopted a resolution providing for the issuance and sale of new bonds in the principal sum of $25,000 at an interest rate not to exceed 6½ percent and for cancellation of the unissued bonds, and directed its secretary, respondent herein, to publish notice inviting bids for the sale of the new bonds. Respondent refused to comply with the board's order on the ground that new bonds bearing an interest rate in excess of 5 percent would be invalid. Petitioner prays for a judgment decreeing that bonds issued pursuant to section 71960 and the resolution of April 16, 1969, will be valid obligations of the District for the improvement district, and for a peremptory writ of mandate directing respondent to fix a date and time for receipt of bids and to publish notice inviting bids.

Respondent has filed an answer admitting all of the allegations of the petition except for the allegation that the new bonds, if sold, would be valid obligations of the district.

■ A sufficient showing has been made to justify an original proceeding in this court. In compliance with rule 56(a) of the Rules on Appeal petitioner alleges that it is proper for a reviewing court to originally entertain the petition because a determination respecting the validity of section 71960 is a matter of statewide public concern, that many municipal water districts in the state have evidenced a desire to utilize section 71960, and that the present proceeding will avoid a multiplicity of lawsuits. Original proceedings have been entertained for the purpose of considering validity of municipal bonds under like circumstances. (*Golden Gate Bridge etc. Dist.* v. *Felt,* 214 Cal. 308, 317 [5 P.2d 585]; *City of Los Angeles* v. *Dannenbrink,* 234 Cal.App.2d 642, 645 [44 Cal.Rptr. 624]; *Sacramento Mun. Util. Dist.* v. *Spink,* 145 Cal.App.2d 568, 572 [303 P.2d 46]; *County Sanitation Dist. No. 1* v. *Humeston,* 103 Cal.App.2d 301 [229 P.2d 438].) We proceed to a consideration of the merits.

■ Petitioner contends that inasmuch as the Legislature could have authorized municipal water districts to issue general obligation bonds without a vote of the electorate and without restriction as to amount or interest rate, it necessarily had the power to confer on the district directors the authority to issue bonds without voter approval subject to the limitations prescribed by section 71960.

It is settled law that the Legislature may authorize special districts of the class in which petitioner falls to incur bonded indebtedness without prior voter approval. While section 18 of article XI of the Constitution prohibits counties, cities and school districts from incurring an indebtedness in any

year that exceeds current revenues provided for such year without a two-thirds vote of the electorate,[2] the constitutional restriction applies only to the enumerated local governmental entities and not to public corporations not named.[3] (*Joint Highway Dist. No. 13* v. *Hinman,* 220 Cal. 578, 587 [32 P.2d 144]; *Bliss* v. *Hamilton,* 171 Cal. 123, 132-133 [152 P. 303]; *Robertson* v. *Library Trustees,* 136 Cal. 403, 405 [69 P. 88]; *In re Madera Irr. Dist.,* 92 Cal. 296, 342 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755]; *Trumbo* v. *Crestline Lake Arrowhead Water Agency,* 250 Cal.App.2d 320, 324 [58 Cal.Rptr. 538]; *Strain* v. *East Bay Mun. Util. Dist.,* 21 Cal.App.2d 281, 284 [69 P.2d 191]; *General Engineering etc. Co.* v. *East Bay Mun. Util. Dist.,* 126 Cal.App. 349, 356 [14 P.2d 828].) Consequently, the Supreme Court has consistently reiterated the proposition that the Legislature may authorize public corporations which are not subject to the provisions of section 18, article XI, of the Constitution to issue general obligation bonds without a vote of the electorate. (*Joint Highway Dist. No. 13* v. *Hinman, supra,* 220 Cal. 578, 587; *El Dorado Irr. Dist.* v. *Browne,* 216 Cal. 269, 272 [13 P.2d 921]; *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119, 131 [169 P. 1028]; *In re Bonds of South San Joaquin Irr. Dist.,* 161 Cal. 345, 346 [119 P. 198]; *In re Madera Irr. Dist., supra,* 92 Cal. 296, 342.) The Legislature's plenary power over such public corporations has been summarized as follows: "In considering the authority of the district and its directors, it should be remembered that the legislative power over such districts is plenary, and that they might be formed and permitted to issue bonds without any vote of the electorate at all. There is no constitutional right of residents of such a district to vote on bond issues." (*El Dorado Irr. Dist.* v. *Browne, supra,* 216 Cal. 269, 272.)

A similar pronouncement was made in *Los Angeles County Flood Control Dist.* v. *Hamilton, supra,* 177 Cal. 119, where the court held that a validating act effectively cured alleged irregularities in a bond elec-

---

[2]Section 18 of article XI of the California Constitution provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue, provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed 40 years from the time of contracting the same; provided, however, anything to the contrary herein notwithstanding, when two or more propositions for incurring any indebtedness or liability are submitted at the same election, the votes cast for and against each proposition shall be counted separately, and when two-thirds of the qualified electors, voting on any one of such propositions, vote in favor thereof, such proposition shall be deemed adopted."

[3]The state is subject to a similar limitation on the power to incur indebtedness. (Const., art. XVI, § 1.)

tion proceeding of a flood control district. The court declared at p. 131: "It is said by the interveners that the holding of the election is, by the terms of the Flood Control Act, made jurisdictional. But it is not a step required by any constitutional provision. No election need have been authorized in the first instance. The legislature might have provided for the issuance of the bonds without giving any voice in the matter to the residents of the district."

Respondent does not quarrel with the proposition that the Legislature could have authorized the board of directors of municipal water districts in the first instance, to issue bonds without submitting the question to the voters. However, she contends that section 71960, while purporting to authorize issuance of "new bonds," is in fact but an attempted authorization to sell previously voted bonds at an interest rate higher than the former statutory permissible maximum stated in the order calling the bond election and that such amendatory legislation violates the principle enunciated in *Peery* v. *City of Los Angeles,* 187 Cal. 753 [203 P. 992, 19 A.L.R. 1044].

In *Peery* v. *City of Los Angeles, supra,* voter approval was obtained for the issuance and sale of municipal bonds under an act which required such bonds to be sold at par with an interest rate not exceeding 4½ percent per annum. Subsequently the Legislature amended the statute by authorizing cities to sell unsold bonds at a price which would net purchasers not more than 6 percent per annum. The court held that the city could not avail itself of the benefit of the amendment; that a status "analogous" to a contractual relationship was created "through the exercise of the constitutional right of the electors" of the city in approving the creation of the bonded indebtedness; and that the Legislature was prohibited from altering to the extent attempted the terms and conditions under which voter approval was obtained.

Petitioner contends that we need not reach the question whether the Legislature could have authorized the board of directors to sell previously voted bonds at a higher interest rate. It urges that we may rest our decision on the fact that section 71960 authorizes cancellation of the previously voted bonds and the issuance of "new bonds." However, the label "new bonds" cannot obscure the fact that the section is in reality an authorization to sell previously voted bonds at a higher interest rate. The section is operative only if bonds have been previously authorized by the voters; the "new bonds" must be limited to the amount and for the purpose previously authorized; and the statutory policy requiring voter approval to incur district bonded indebtedness remains unchanged except as provided in the new section. The legislative declaration of urgency reveals that the section was manifestly designed to permit municipal water districts to sell pre-

viously authorized but unsold bonds at a higher interest rate.[4] In these circumstances, to rest our decision on the narrow formalistic distinction that the section authorizes issuance of "new bonds" rather than previously authorized bonds would be permitting form to reign over substance. The inevitable issue is whether the Legislature was empowered to permit previously authorized bonds to be sold at an interest rate higher than that which was permissible at the time the bonds were voted. In fact, petitioner candidly concedes that if its position is sound, it would logically follow that the Legislature was empowered to do exactly that.

Thus the controlling question is whether section 71960 violates the rule of *Peery* v. *City of Los Angeles, supra,* 187 Cal. 753. We conclude that it does not.

Although in *Peery* the court described the relationship between the voters and the municipality as being "analogous" to a contractual one, it expressly refrained from holding that a contract "in the ordinary sense of the term" had been created between the voters and the city. However, the case has been frequently cited for the bald proposition that voter approval of a bond proposal gives rise to a contractual relationship between the voters and the public entity. (See, e.g. *Golden Gate Bridge, etc. Dist.* v. *Filmer,* 217 Cal. 754, 757 [21 P.2d 112, 91 A.L.R. 1]; *Los Angeles County Flood Control Dist.* v. *Wright,* 213 Cal. 335, 349 [2 P.2d 168]; *O'Farrell* v. *County of Sonoma,* 189 Cal. 343, 348 [208 P. 117]; see Comment, *Alteration of Rights in California Public Securities,* 53 Cal.L. Rev. 1081, 1083-1084.)

The true legal basis for *Peery* was cogently expressed in *State School Bldg. Fin. Committee* v. *Betts,* 216 Cal.App.2d 685, 693 [31 Cal.Rptr. 258]: "It is not necessary to draw contractual analogies. The logical basis for invalidating such amendments is not that they violate a metaphorical contract; rather, that they clash with the constitutional provision which required popular approval of the bonds in the first place, or, as in this case, the constitutional authority for the bond issue." Indeed, despite its reference to the nebulous concept of "a status analogous" to a contractual relationship between the electors and the municipality, the *Peery* opinion clearly indicates that the true rationale of the decision was that the

---

[4]The statement of urgency reads: "Various municipal water districts have authorized but have not issued bonds which were authorized to provide funds for improvements urgently needed for the preservation of the public health and safety. In many cases, these bonds were authorized at an election held prior to May 9, 1967, at a time when the maximum interest rate under Section 71953 of the Water Code was 5 percent per annum. Because of rising interest rates many of these issues cannot be sold at a 5 percent rate. Although section 71953 was amended on May 9, 1967, to raise the maximum to 6½ percent, a question has arisen as to whether or not bonds authorized at an election held prior to this amendment can be issued at a rate higher than 5 percent." (Stats. 1968, ch. 1269.)

amendatory statute violated section 18, article XI of the Constitution. Throughout the opinion the court refers to the constitutional right of the electors of a city to give or withhold their approval on the question of incurring any indebtedness beyond the limitations prescribed by the constitutional provision. The court relied upon its earlier decision in *Skinner* v. *City of Santa Rosa,* 107 Cal. 464 [40 P. 742, 29 L.R.A. 512], invalidating an attempt by a city council to sell bonds providing for semi-annual interest payments when voter authorization was obtained for issuance of bonds providing for annual interest payments and explained its *Skinner* decision by stating: ". . . this court held that the provision for the payment of the added interest upon said bonds would in effect increase the amount of the indebtedness which the electors had by their votes approved, and would to that extent be a violation of the constitutional inhibition." (*Peery* v. *City of Los Angeles, supra,* 187 Cal. 753, 768.)

Unlike the situation in *Peery, supra,* in the instant case section 71960 does not collide with any constitutional right of the electors of a municipal water district to pass on the question of incurring a district indebtedness. The requirement of voter approval being purely statutory, in the exercise of its plenary power over municipal water districts the Legislature was empowered to modify or dispense with the requirement entirely so long as vested rights were not impaired. (*La Mesa etc. Irr. Dist.* v. *Halley,* 197 Cal. 50 [235 P. 999]; *General Engineering etc. Co.* v. *East Bay Mun. Util. Dist., supra,* 126 Cal.App. 349, 357.) No constitutionally protected rights vested in the voters by virtue of the initial authorization to issue bonds.[5]

Nor will the issuance of the "new bonds" impair contractual rights of the

---

[5]The contract theory was expressly rejected when it was sought to be applied to invalidate an amendatory statute relating to the organization and powers of a special district. (*LaMesa etc. Irr. Dist.* v. *Halley,* 197 Cal. 50, 60-61 [235 P. 999].) The court held electors had no "contractual" or "vested" right to the continuance of the law which was in existence at the time they voted to form the district and disapproved any contrary language in *Merchants Nat. Bank* v. *Escondido Irr. Dist.,* 144 Cal. 329 [77 P. 937].

Compare also the concurring opinion of Justice Shenk in which four other justices joined in *Warfield* v. *Anglo & London Paris Nat. Bank,* 202 Cal. 345, 357 [260 P. 881]. The concurring justices were of the opinion that a charter amendment of the City and County of San Francisco empowered the board of supervisors to sell previously authorized bonds at an interest rate higher than that which was permissible at the time the bonds were voted. While the concurring opinion purports to adhere to the theory that a contractual relationship between the voters and the city and county was created when the bonds were approved, the result reached is difficult to square with a strict adherence to the "contract" theory, particularly in light of the fact that the charter required two-thirds vote for bond authorization, whereas the charter amendment required only a majority vote of the electors. The true rationale of the concurring opinion appears in the following statement: "When, as in this case, a majority acted within constitutional bounds no question of the impairment of contract rights can arise." In the case under review, it can be said with equal validity that inasmuch as the Legislature has acted within constitutional bounds, there can be no question of impairment of vested rights.

holders of the $75,000 of bonds previously issued. While the land owners' tax burden may be somewhat increased by reason of the higher interest rate on the $25,000 of bonds proposed to be sold, such added burden is not of sufficient substantiality to constitute an impairment of the contractual rights of existing bondholders. (See *State School Bldg. Fin. Committee* v. *Betts, supra,* 216 Cal.App.2d 685.)

We conclude that the enactment of section 71960 constituted a valid exercise of the Legislature's power over the affairs of municipal water districts and that petitioner is entitled to the relief sought.

Let a peremptory writ of mandate issue directing respondent to fix a date and time for the receipt of bids for the sale of the bonds and to publish notice inviting bids therefor.

Kerrigan, Acting P. J., and Gardner, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.